[Cite as *Parker v. Distel Constr., Inc.*, 2011-Ohio-4727.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

CASSIE PARKER,                                   :

    Plaintiff-Appellee,                       :      Case No.   10CA18

    vs.                                                    :

DISTEL CONSTRUCTION, INC.,
 et al.,                                                    :      DECISION AND JUDGMENT ENTRY


    Defendant-Appellant.                    :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      Wilson G. Weisenfelder, Jr., RENDIGS, FRY, KIELY &
DENNIS, L.L.P., One West Fourth Street, Suite 900,
Cincinnati, Ohio 45202-3688

COUNSEL FOR APPELLEE:        William H. Safranek, P.O. Box 2606, Athens, Ohio 45701

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 9-6-11

ABELE, J.

{¶ 1}   This is an appeal from a Jackson County Common Pleas Court judgment that denied

the City of Wellston's, defendant below and appellant herein, request for summary judgment.

Appellant assigns the following error for review:

> "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE CITY
> OF WELLSTON IN DENYING ITS CLAIM TO IMMUNITY."

{¶ 2}   On September 4, 2007, Cassie Parker, plaintiff below and appellee herein, fell into an

approximately twenty-five inch hole.   The hole is located at the side of appellant's water meter and Parker suffered injuries as a result of the fall.

{¶ 3}   On August 26, 2009, appellee filed a complaint against appellant (and others who are no longer parties to the action).   Appellee alleged that appellant negligently failed to safely maintain the water meter hole, which caused appellee to suffer injuries.

{¶ 4}   Appellant requested summary judgment and claimed that (1) it is immune from liability under R.C. 2744.02(A); and (2) none of the R.C. 2744.02(B) exceptions remove its immunity.   Appellee argued, however, that appellant's failure to properly maintain the water meter hole constitutes a proprietary function for which liability may attach under R.C. 2744.02(B)(2). After consideration of the motion and contrary memoranda, the trial court determined that genuine issues of material fact exist and denied appellant's motion.   The trial court did not, however, provide a specific reason for its decision.   This appeal followed.

{¶ 5}   In its sole assignment of error, appellant asserts that the trial court improperly determined that it is not entitled to statutory immunity.[1]   Appellant contends that appellee failed to demonstrate that any of the exceptions to immunity apply so as to subject appellee to liability for negligence.   In particular, appellant asserts that appellee failed to establish that either R.C. 2744.02(B)(2) or (3) removes its immunity: (1) R.C. 2744.02(B)(2) does not apply because the maintenance or repair of the water meter pit lid constitutes a governmental function; (2) R.C.

---

[1]   We note that the trial court's decision does not provide a specific reason for denying appellant's summary judgment motion, other than to state that genuine issues of material fact remain.     The trial court did not mention R.C. Chapter 2744 and did not issue any specific determination as to whether appellant is entitled to statutory immunity.     Although the trial court did not enter a specific finding regarding statutory immunity, the effect of the trial court's decision is to deny appellant the benefit of an alleged immunity.     That is, by determining that genuine issues of material fact remained, the trial court necessarily denied appellant the benefit of an alleged immunity.

2744.02(B)(3) does not apply because the water meter pit is not located on a public road.

**{¶ 6}**   Appellee contends, however, that appellant may be held liable under R.C.

2744.02(B)(2).   Appellee asserts that appellant's failure to place a lid on the water meter pit

constitutes maintenance of the water supply system, which is a proprietary function under R.C.

2744.01(G)(2)(c).   We observe that appellee does not argue that appellant may be held liable

under R.C. 2744.02(B)(3), thus we limit our review to whether R.C. 2744.02(B)(2) removes

appellant's immunity.

A

SUMMARY JUDGMENT STANDARD

**{¶ 7}**   Appellate courts review trial court summary judgment decisions de novo.   Grafton

v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.   Accordingly, appellate

courts must independently review the record to determine if summary judgment is appropriate.   In

other words, appellate courts need not defer to trial court summary judgment decisions.   See

Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153;

Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786.   Thus, to determine

whether a trial court properly awarded summary judgment, an appellate court must review the

Civ.R. 56 summary judgment standard as well as the applicable law.   Civ.R. 56(C) provides:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   No evidence or stipulation may be considered except as stated in this rule.   A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment

is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶ 8}** Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.   See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-430, 674 N.E.2d 1164.

B

R.C. CHAPTER 2744

**{¶ 9}** R.C. Chapter 2744 establishes a three-step analysis to determine whether a political subdivision is immune from liability.   See, e.g., Cramer v. Auglaize Acres, 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, ¶14.   First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions.   See, e.g., Cramer; Colbert v. Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶7; Harp v. Cleveland Hts. (2000), 87 Ohio St.3d 506, 509, 721 N.E.2d 1020.   The statute states: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

**{¶ 10}** Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to

political subdivisions under R.C. 2744.02(A)(1).   See, e.g., <u>Cramer</u>; <u>Ryll v. Columbus Fireworks Display Co.</u>, 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, at ¶25.   As relevant in the case sub judice, R.C. 2744.02(B)(2) states:

> Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

{¶ 11}  Finally, if liability exists under R.C. 2744.02(B), R.C. 2744.03(A) sets forth several defenses that re-instate a political subdivision's immunity.[2]   See <u>Cramer</u>; <u>Colbert</u> at ¶9. Generally, whether a political subdivision is entitled to statutory immunity under R.C. Chapter 2744 presents a question of law.   See, e.g., <u>Conley v. Shearer</u> (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862; <u>Murray v. Chillicothe</u>, Ross App. No. 05CA2819, 2005-Ohio-5864, ¶11.

{¶ 12}  In the case sub judice, the parties do not dispute that appellant is entitled to the general grant of immunity under R.C. 2744.02(A)(1).   Instead, the dispute focuses on the R.C. 2744.02(B)(2) exception to immunity.

{¶ 13}  R.C. 2744.02(B)(2) subjects a political subdivision to liability for "the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."   Thus, before this provision removes a political subdivision's immunity, a plaintiff must demonstrate that the political subdivision's employees negligently performed a proprietary function.   Accordingly, before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish: (1) the elements required to sustain a negligence action-duty, breach,

---

[2]   We observe that appellant has not argued on appeal that even if an immunity exception applies, R.C. 2744.03(A) re-instates its immunity.    Our review, therefore, is limited to whether the R.C. 2744.02(B)(2) exception applies.

proximate cause, and damages; and (2) that the negligence arose out of a "proprietary function." See Essman v. Portsmouth, Scioto App. No. 09CA3325, 2010-Ohio-4837, ¶28, citing Gabel v. Miami E. School Bd., 169 Ohio App.3d 609, 2006-Ohio-5963, 864 N.E.2d 102, at ¶39-40.  A "proprietary function" includes "[t]he establishment, maintenance, and operation of a utility, including * * * a municipal corporation water supply system."   R.C. 2744.01(G)(2)(c).

{¶ 14}  In the case sub judice, appellant contends that the R.C. 2744.02(B)(2) exception does not apply to its failure to place a lid on the water meter pit.   Appellant contends that the maintenance or repair of the water meter pit lid is analogous to the maintenance or repair of a manhole cover, which at least one court has concluded constitutes a governmental function. Appellant asserts that the water meter pit lid is not part of the water supply system, but instead, is part of the right-of-way and is intended only to cover the opening to the water meter pit.

{¶ 15}  In support of its argument, appellant relies upon Burns v. Upper Arlington, Franklin App. No. 06AP-680, 2007-Ohio-797.   In Burns, the plaintiff tripped over a manhole cover while walking on a sidewalk.   The evidence showed that the placement of the manhole cover created a raised edge on the sidewalk, which allegedly caused the plaintiff to trip.   The plaintiff filed a complaint that alleged that the city: (1) failed to properly fit and align the manhole cover with the sidewalk; and (2) negligently failed to maintain the sidewalk in a reasonably safe condition.   The city argued that it was entitled to immunity under R.C. Chapter 2744, and specifically that the plaintiff could not establish that the R.C. 2744.02(B)(2) exception to immunity applied so as to remove the general grant of immunity.   The city contended that any negligence on its part resulted from a governmental, not a proprietary, function.   The city claimed that its placement of the manhole cover constituted a governmental function under R.C. 2744.01(C)(2)(e), which defines a

governmental function as "* * * the maintenance and repair of * * * sidewalks * * *." Thus, the city contended that the placement of the manhole cover was nothing more than a sidewalk maintenance issue. The plaintiff, however, alleged that the city's placement of the manhole cover related to its "maintenance, destruction, operation, and upkeep of a sewer system," which R.C. 2744.01(G)(2)(d) defines as a proprietary function. The trial court agreed with the plaintiff and denied the city's summary judgment motion.

{¶ 16} On appeal, the court framed the issue as "whether aligning the manhole cover would be considered part of the maintenance of the sidewalk and therefore a governmental function * * * or part of maintenance of the sewer system and therefore a proprietary function * * *." Id. at ¶12. The court concluded that the city's placement of the manhole cover in the sidewalk constituted a sidewalk maintenance issue and explained: "Although the manhole cover upon which [the plaintiff] tripped was intended to provide access to the sewer system, it was not, in and of itself, a part of that system. It was, instead, intended to form part of the walkway for pedestrian traffic to use, and was therefore part of the sidewalk." Id. at ¶15. The court therefore reversed the trial court's decision that denied the city summary judgment.

{¶ 17} We do not find the instant case to be substantially similar to Burns. In Burns, the plaintiff, unlike appellee, never encountered the underground system. Instead, the Burns plaintiff tripped and fell on a sidewalk. In the case at bar, appellee, unlike the plaintiff in Burns, did not trip over a manhole cover, and nor did she trip over an object that was part of a sidewalk or part of a pedestrian walkway. Instead, appellee fell into a water meter pit. Thus, we do not believe that this case is similar to a plaintiff tripping over an object improperly placed on a sidewalk as in Burns, but, rather, is an instance of a plaintiff falling into a hole that the city left uncovered. The

hole that appellee fell into in the case at bar was the water meter pit.    The water meter pit is part

and parcel of the water supply system.    Appellant's attempt to analogize the present case to Burns

by stating that the water meter pit lid is analogous to the sidewalk manhole cover fails to recognize

that in the case at bar, there was no lid.    Unlike the plaintiff in Burns, appellee has not claimed

that appellant negligently placed the water meter pit lid on a sidewalk so as to cause her fall.

Instead, she has alleged that appellant negligently maintained the water supply system by failing to

place a lid over the water meter pit so as to prevent her fall.

{¶ 18}  We believe that the case sub judice is more analogous to recent cases that have

distinguished Burns.    For example, in Scott v. Columbus Dept. of Pub. Utilities, Franklin App.

No. 10AP-391, 2011-Ohio-677, the plaintiff filed a negligence complaint against the city after he

fell into a manhole that did not have a properly attached cover.    He alleged that the city negligently

allowed the manhole cover to become improperly anchored.    The city asserted that it was entitled

to immunity under R.C. Chapter 2744.    The plaintiff argued that R.C. 2744.02(B)(2) applied and

removed the city's immunity.    The trial court agreed with the city and dismissed the plaintiff's

complaint.

{¶ 19}  On appeal, the court considered whether the plaintiff's complaint alleged negligence

with respect to the maintenance of the sewer system, a proprietary function, or whether it alleged

maintenance and repair of the sidewalk, a governmental function.    The court first observed that the

trial court "misstated the issue as whether the manhole cover itself functioned as a part of the

sidewalk or a part of the sewer."    Id. at ¶11.    The court clarified that the "central issue" is

"whether the action for which [the plaintiff] seeks to hold the city liable is part of a governmental

function or part of a proprietary function."    Id.    The court stated that whether the city is entitled to

immunity depends on whether "allowing the manhole cover to become improperly anchored, relates to the maintenance of the sewer system or to the maintenance of the sidewalk." Id. The court ultimately concluded that the plaintiff's complaint alleged sufficient facts to support his theory of negligence against the city and that it did not appear beyond doubt that the city was entitled to immunity based upon the allegations in the complaint.

{¶ 20} In reaching its decision, the court rejected the city's argument that the plaintiff's allegations were analogous to the plaintiff's allegations in Burns. The court explained:

> "The city maintains that the issue in Burns is identical to the issue here and that Burns is, therefore, dispositive. Specifically, the city contends that the alleged act here–allowing the manhole cover to become improperly anchored–is indistinguishable from the alleged improper alignment of the manhole cover in Burns because both involve the placement of a manhole cover. We disagree. In Burns, the plaintiff tripped over a manhole cover protruding above the level of the sidewalk and alleged that Upper Arlington negligently failed to align the manhole cover with the sidewalk. That the protrusion was a manhole cover was, for the most part, irrelevant, when the plaintiff was essentially alleging a failure to maintain the sidewalk. * * * [T]he Burns court differentiated negligence relating to the manhole cover itself * * * from negligence relating to the underlying portion of the sewer supporting the manhole cover. In this case, it is reasonable to infer from [the plaintiff's] allegation that the city negligently 'allowed the manhole cover to become improperly anchored' that he is alleging negligence with respect to the city's maintenance of the underlying support for the manhole cover."

Id. at ¶16.

{¶ 21} In the earlier case of Martin v. Gahanna, Franklin App. No. 06AP-1175, 2007-Ohio-2651, the court determined that Burns did not apply when the plaintiff stepped into an uncovered sewer drain. In Martin, the plaintiff filed a negligence complaint against the city and alleged that the city negligently failed to cover and to inspect the sewer drain. The city requested summary judgment and asserted that it was entitled to immunity under R.C. Chapter 2744. The trial court denied the city's request on the basis of statutory immunity.

{¶ 22} On appeal, the city argued that the absence of the sewer grate resulted from a recent theft, and was therefore not the result of a maintenance or repair issue. The city asserted that because the absence of the sewer grate did not result from lack of maintenance or repair, "by default," it resulted from the "provision or nonprovision, planning or design, construction, or reconstruction of * * * a sewer system" which is a governmental function under R.C. 2744.01(C)(2)(l) such that it is entitled to immunity. The court agreed with the plaintiff that the city's failure to cover the sewer drain constituted a proprietary function. The court stated:

> "We find that the need to inspect and replace missing components necessary for the safe operation of the storm water system clearly falls within the definition of maintenance or upkeep of a sewer system, and not the provision, design, or reconstruction of a sewer system."

Id. at ¶17. The court thus concluded that the city could be liable under R.C. 2744.02(B)(2).

{¶ 23} We believe that the case at bar is more analogous to Scott and Martin than to Burns. Like the plaintiffs in Scott and Martin, appellee in the case at bar alleges not a failure to maintain a sidewalk or other walkway, but instead, a failure to properly maintain part of an underground water system – a water supply system, and in Scott and Martin, a sewer system. All three cases involve plaintiffs who fell into a hole in the system due to a defect in a cover to those systems. In Scott, the defect resulted from an improperly attached manhole cover. In Martin, the defect resulted from the absence of a sewer grate. And, in the case sub judice, the defect results from the absence of a water meter pit lid. The defect in the case at bar is not the result of a sidewalk maintenance issue, as in Burns. Instead, the defect alleged in the case at bar is virtually indistinguishable from the absence of the sewer grate in Martin. The absence of the sewer grate caused the Martin plaintiff to fall. In the case at bar, the absence of the water meter pit lid caused

appellee to fall.   Because we find no evidence to suggest that the water meter pit lid related in any manner to the maintenance of a sidewalk, we reject appellant's attempt to compare the instant case to Burns.   Instead, we conclude that the water meter pit lid, like a storm sewer grate, is a safety feature of the underground system that is necessary for its safe operation, i.e., to protect the public from falling into the holes that lead underground.

{¶ 24} Therefore, we disagree with appellant that the maintenance of the water meter lid is a governmental function.   Rather, the maintenance of the water meter lid is part of the maintenance of the water supply system–a proprietary function for which appellant may be liable under R.C. 2744.02(B)(2).   Consequently, the trial court properly denied appellant's summary judgment motion.

{¶ 25} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.


JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, P.J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.