[Cite as *Fedarko v. Cleveland*, 2014-Ohio-2531.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100223

# SALLY A. FEDARKO, ET AL.

**PLAINTIFFS-APPELLEES**

vs.

# CITY OF CLEVELAND, ET AL.

**DEFENDANTS-APPELLANTS**

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-792549

**BEFORE:**  Boyle, A.J., Keough, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**  June 12, 2014

**ATTORNEYS FOR APPELLANTS**

Barbara A. Langhenry
Director of Law
John P. Bacevice, Jr.
Assistant Director of Law
City of Cleveland
601 Lakeside Avenue, Room 106
Cleveland, Ohio   44114

**ATTORNEY FOR APPELLEES**

Earl F. Ghaster
Kubyn & Ghaster
8373 Mentor Avenue
Mentor, Ohio   44060

MARY J. BOYLE, A.J.:

{¶1} Defendant-appellant, city of Cleveland, appeals from the trial court's judgment denying its motion for summary judgment on the issue of political subdivision immunity. It raises three assignments of error for our review:

1. The trial court erred in ruling that the trier of fact could find negligence on the part of the city for action or inaction for which the city is immune from negligence liability under Ohio Revised Code Chapter 2744 and no exception applies.

2. The trial court erred in ruling that a manhole cover on a sidewalk was part of the proprietary function of operating a municipal water system and not the governmental function of establishing and maintaining a sidewalk.

3. The trial court erred in ruling that defendant-appellant could be found negligent relating to inspections of manhole covers where such inspections are a governmental function and defendant-appellant is immune from liability.

{¶2} Finding no merit to the city's arguments, we affirm.

Procedural History and Factual Background

{¶3} The facts relevant to this appeal are not in dispute. In October 2010, plaintiff-appellee, Sally Fedarko ("Fedarko"), was walking on a sidewalk on Cable Avenue in Cleveland, Ohio, when she stepped on a manhole cover located on the sidewalk. When she stepped on the cover, it gave way, causing her to fall up to her waist into the open hole that was beneath the sidewalk. Fedarko was injured in the fall.

{¶4} The Fedarkos hired James Madden, a licensed professional engineer, to be their liability expert. Madden explained that the subject manhole was a common city water meter vault, which was a brick-lined hole in the ground that was several feet deep.

The top of the manhole had a removable steel cover that was mounted on a steel ring that covered the manhole. Madden explained that water meter vaults were constructed to hold water meters for billing purposes, as well as water pipes for nearby homes and businesses. This particular water meter vault, however, was no longer in use and no longer had any water meters in it. By the time the Fedarkos hired Madden, the city had already backfilled the vault and cemented the hole. Thus, Madden based his report on reviewing relevant city documents, police reports, and photographs of the manhole cover.

{¶5} The city's division of water conducted a search of its records of the manhole prior to Fedarko's fall. The last known inspection of the manhole was conducted on April 6, 2008, by an employee of the division of water, after it received a report that the manhole did not have a cover. The division of water employee inspected the manhole and reported: "Found no missing cover[;] Arrived 5:15 p.m. left 5:38 p.m." There are no other reports of any issues with the manhole or cover after April 6, 2008.

{¶6} After Fedarko reported her injuries to the city, the division of water sent John Lally, a meter repair employee, to inspect the subject manhole and cover. Lally explained that the manhole cover sat on top of a brick-lined vault in the ground that normally contained water meters for surrounding buildings. The cover sits on a "ring" that is on top of the brick vault. The ring and cover were comprised of steel. Upon inspection, he found that the water meter vault was no longer in use; he noted in his report that it was an "abandoned vault." He further discovered that the manhole "ring," that he explained was the "case that the cover sits on," was "worn." He explained that the

"ring" was "worn" from "wear and tear" and being "old." Lally stated that there was no way to determine how long the ring and cover were in that condition.

{¶7} In October 2012, the Fedarkos filed a complaint against the city. They alleged that the city negligently failed to inspect, maintain, or repair the defective and dilapidated manhole cover. As a result of the city's alleged negligence, plaintiffs claim that Sally Fedarko stepped on the defective manhole cover, which gave way, causing her to fall into the uncovered hole. Plaintiffs claim that under R.C. 2744.02(B)(2), the city is not immune from liability. Plaintiffs further allege that as a result of the city's alleged negligence, Michael Fedarko suffered the lost of consortium of his wife.

{¶8} In June 2013, the city moved for summary judgment, which the trial court denied. It is from this judgment that the city appeals.

Political Subdivision Immunity

{¶9} In its first assignment of error, the city argues that the trial court erred when it denied the city's summary judgment motion because the city claims that it is entitled to the protection of political subdivision immunity set forth in R.C. Chapter 2744. Central to this determination is whether maintaining the manhole cover and water meter vault fall under the proprietary water system or the "governmental function of maintaining a sidewalk." The city raises this exact question in its second assignment of error. Thus, we will address the city's first and second assignments of error together as they are inextricably intertwined.

**{¶10}** The Ohio Supreme Court set forth a three-tiered analysis to determine whether a political subdivision is immune from tort liability: the first tier is to establish immunity under R.C. 2744.02(A)(1); the second tier is to analyze whether any of the exceptions to immunity under R.C. 2744.02(B) apply; if so, then under the third tier, the political subdivision has the burden of showing that one of the defenses of R.C. 2744.03 applies. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998); *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 10-12. If a defense applies, then immunity is reinstated. *Id.*

**{¶11}** R.C. 2744.02(A)(1) provides the general grant of immunity as follows: "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

**{¶12}** R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions. *See Ryll v. Columbus Fireworks Display Co.*, 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, ¶ 25. In their complaint, plaintiffs allege that the immunity exception set forth in R.C. 2744.02(B)(2) applies to the facts of their case. This immunity exception subjects a political subdivision to liability for "the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2).

{¶13} As relevant to this appeal, R.C. 2744.01(G)(2)(c) provides that a "proprietary function" includes "[t]he establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a bus line or other transit company, an airport, and a municipal *corporation water supply system*." (Emphasis added.) And under R.C. 2744.01(C)(2)(e), a "governmental function" includes "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, *sidewalks*, bridges, aqueducts, viaducts, and public grounds." (Emphasis added.) R.C. 2744.01(C)(2)(e).

{¶14} Again, the central question presented in this case is whether the subject manhole and cover fall within the proprietary water system or within the governmental function of maintaining a sidewalk. The answer depends on whether the manhole cover and water meter vault fall within the city's water system under R.C. 2744.01(G)(2)(c) or the city's sidewalks under R.C. 2744.01(C)(2)(e).

{¶15} The Fedarkos assert that the manhole cover and water meter vault were part of the city's water system and, therefore, a proprietary function of the city under R.C. 2744.01(G)(2)(c). The city maintains, however, that the manhole cover and vault were not part of the city's water system, but part of the sidewalk. The city maintains that because the manhole cover was part of the sidewalk, it falls within the ambit of R.C. 2744.01(C)(2)(e) and, therefore, the maintenance and repair of the manhole would be a governmental function.

**{¶16}** In support of its argument that the manhole is part of the sidewalk and not the water system, the city cites to *Burns v. Upper Arlington*, 10th Dist. Franklin No. 06AP-680, 2007-Ohio-797. In *Burns*, the plaintiff tripped on a manhole cover while walking on a sidewalk. The evidence showed that the placement of the manhole cover created a raised edge on the sidewalk that allegedly caused the plaintiff to trip. The plaintiff filed a complaint against the city alleging, in part, that the city failed to properly fit and align the manhole cover with the sidewalk. The plaintiff alleged that the city's placement of the manhole cover related to its "maintenance, destruction, operation, and upkeep of a sewer system," which R.C. 2744.01(G)(2)(d) defines as a proprietary function.

**{¶17}** The city in *Burns* argued that it was entitled to immunity under R.C. Chapter 2744, and specifically that the plaintiff could not establish that the R.C. 2744.02(B)(2) exception to immunity applied because any negligence on its part resulted from a governmental, not a proprietary, function. The city claimed that its placement of the manhole cover constituted a governmental function under R.C. 2744.01(C)(2)(e) (defining a governmental function as "* * * the maintenance and repair of * * * sidewalks * * *"). Thus, the city argued that the placement of the manhole cover was nothing more than a sidewalk maintenance issue. The trial court agreed with the plaintiff and denied the city's summary judgment motion.

**{¶18}** On appeal, the Tenth District framed the issue in *Burns* as "whether aligning the manhole cover would be considered part of the maintenance of the sidewalk and

therefore a governmental function * * * or part of maintenance of the sewer system and therefore a proprietary function * * *." *Id*. at ¶ 12. The court concluded that the city's placement of the manhole cover in the sidewalk constituted a sidewalk maintenance issue and explained:

> Although the manhole cover upon which [the plaintiff] tripped was intended to provide access to the sewer system, it was not, in and of itself, a part of that system. It was, instead, intended to form part of the walkway for pedestrian traffic to use, and was therefore part of the sidewalk.

*Id*. at ¶ 15. The Tenth District reversed the trial court's decision that denied the city summary judgment. *Id.* at ¶ 16.

{¶19} In *Burns*, the plaintiff tripped on the manhole cover and fell *on* the sidewalk. But when presented with factual situations that are more similar to the facts in the present case, where the plaintiff fell *in* a manhole after stepping on the manhole cover, the Tenth Appellate District distinguished its previous holding in *Burns* and held that the city could be liable under the R.C. 2744.02(B)(2) exception to immunity.

{¶20} In *Martin v. Gahanna*, 10th Dist. Franklin No. 06AP-1175, 2007-Ohio-2651, which was decided a few months after *Burns*, the court determined that *Burns* did not apply when the plaintiff stepped *into* an uncovered sewer drain. In *Martin*, the plaintiff filed a negligence complaint against the city and alleged that the city negligently failed to cover and to inspect the sewer drain. The city requested summary judgment and asserted that it was entitled to immunity under R.C. Chapter 2744. The trial court denied the city's request on the basis of statutory immunity.

{¶21} On appeal, the city in *Martin* argued that the absence of the sewer grate resulted from a recent theft, and was therefore not the result of a maintenance or repair issue. The city asserted that because the absence of the sewer grate did not result from lack of maintenance or repair, "by default," it resulted from the "provision or nonprovision, planning or design, construction, or reconstruction of * * * a sewer system," which is a governmental function under R.C. 2744.01(C)(2)(l) such that it is entitled to immunity. But the Tenth District agreed with the plaintiff that the city's failure to cover the sewer drain constituted a proprietary function. The court found that "the need to inspect and replace missing components necessary for the safe operation of the storm water system clearly [fall] within the definition of maintenance or upkeep of a sewer system, and not the provision, design, or reconstruction of a sewer system." *Id.* at ¶ 17. Thus, the Tenth District concluded that the city could be liable under R.C. 2744.02(B)(2).

{¶22} More recently, in *Scott v. Columbus Dept. of Pub. Util.*, 192 Ohio App.3d 465, 2011-Ohio-677, 949 N.E.2d 552 (10th Dist.), the plaintiff filed a negligence complaint against the city after he fell into a manhole that did not have a properly attached cover. He alleged that the city negligently allowed the manhole cover to become improperly anchored. The city asserted that it was entitled to immunity under R.C. Chapter 2744. The plaintiff argued that R.C. 2744.02(B)(2) applied and removed the city's immunity. The trial court agreed with the city and dismissed the plaintiff's complaint.

{¶23} On appeal in *Scott*, the Tenth District considered whether the plaintiff's complaint alleged negligence with respect to the maintenance of the sewer system, a proprietary function, or whether it alleged maintenance and repair of the sidewalk, a governmental function. The court stated that whether the city is entitled to immunity depends on whether "allowing the manhole cover to become improperly anchored, relates to the maintenance of the sewer system or to the maintenance of the sidewalk." *Id*. The Tenth District rejected the city's argument that the plaintiff's allegations were analogous to the plaintiff's allegations in *Burns*, 10th Dist. Franklin No. 06AP-680, 2007-Ohio-797, explaining that the plaintiff in *Burns* had alleged a failure on the city's part to maintain the sidewalk, versus the plaintiff in *Scott* who alleged that the city negligently allowed the manhole cover to become improperly anchored. *Id*. at ¶ 16. The Tenth District in *Scott* reversed the trial court, concluding that the plaintiff was alleging negligence with respect to the city's maintenance of the underlying support for the manhole cover, which was a proprietary function. *Id.*

{¶24} The Fourth District has also distinguished *Burns* and found the city could be liable when a plaintiff fell into a manhole. In *Parker v. Distel Constr., Inc.*, 4th Dist. Jackson No. 10CA18, 2011-Ohio-4727, the court explained:

> We do not find the instant case to be substantially similar to *Burns*. In *Burns*, the plaintiff, unlike appellee, never encountered the underground system. Instead, the *Burns* plaintiff tripped and fell on a sidewalk. In the case at bar, appellee, unlike the plaintiff in *Burns*, did not trip over a manhole cover, and nor did she trip over an object that was part of a sidewalk or part of a pedestrian walkway. Instead, appellee fell into a water meter pit. Thus, we do not believe that this case is similar to a plaintiff tripping over an object improperly placed on a sidewalk as in

*Burns*, but, rather, is an instance of a plaintiff falling into a hole that the city left uncovered.

*Id.* at ¶ 17.

**{¶25}** After reviewing the relevant case law, we disagree with the city that R.C. 2744.01(C)(2)(e) applies to the maintenance and repair of the manhole and cover simply because the cover was located on the sidewalk and the water meter vault was located under the sidewalk. The water meter vault, although abandoned, and the cover over the vault were established as part of the city's water system. Just because they were located on and under the sidewalk does not change this analysis.

**{¶26}** The city further argues that because the legislature removed sidewalks from the immunity exception set forth in R.C. 2744.02(B)(3)[1] in 2002 as part of S.B. 106, that it cannot be liable — because sidewalks (and the manhole on the sidewalk) are no longer included within this "public roads" exception to immunity. We have already determined, however, that the water meter vault and cover were not part of the sidewalk, but the city's water system. Moreover, R.C. 2744.02(B)(3) is not at issue in this case. The fact that the legislature removed sidewalks from the public roads exception to immunity is irrelevant in this case. The city is arguing why R.C. 2744.02(B)(3) should not apply (because sidewalks were removed from the public roads exception to immunity), but Fedarko is not even asserting that it applies.

---

[1] R.C. 2744.02(B)(3) now provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads[.]"

**{¶27}** The city also cites to *Gordan v. Dziak*, 8th Dist. Cuyahoga No. 88882, 2008-Ohio-570, in support of its argument that because the legislature removed sidewalks from the public roads exception, that it cannot be immune. The city further claims that in *Gordan*, this court relied on *Burns,* 10th Dist. Franklin No. 06AP-680, 2007-Ohio-797. But *Gordan* only dealt with a trip and fall on a sidewalk due to an alleged defect in the sidewalk; there was no manhole. *See id.* at ¶ 4-6. Further, R.C. 2744.02(B)(3) was at issue in *Gordan*, not R.C. 2744.02(B)(2). *Id.* at ¶ 28-35. Simply put, *Gordan* has absolutely no relevance to the facts in this case.

**{¶28}** Thus, we conclude that the water meter vault and cover fall within the R.C. 2744.02(B)(2) exception to immunity as they would be part of the city water's system and, therefore, a proprietary function.

**{¶29}** That, however, is not the end of our analysis. Before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, a plaintiff must also establish the elements required to sustain a negligence action. *Puffenberger v. Cleveland*, 8th Dist. Cuyahoga No. 99660, 2013-Ohio-4479, ¶ 8, citing *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, ¶ 16. "'In order to establish negligence, one must show the existence of a duty, a breach of that duty, and that the breach was the proximate cause of an injury.'" *Id.* at ¶ 10, quoting *Nelson* at ¶ 16. "Under R.C. 2744.02(B)(2), a plaintiff must show the city employee was negligent in the performance of his duty to maintain the manhole, not merely that a hazardous condition existed." *Puffenberger* at ¶ 11.

**{¶30}** In *Wilson v. Cleveland*, 8th Dist. Cuyahoga No. 98035, 2012-Ohio-4289, 979 N.E.2d 356, this court specifically held that a "'municipal corporation is liable only for negligence in creating a faulty condition or in failing to repair, remove or guard against defects after receiving actual or constructive notice of their existence.'" *Id.* at ¶ 23, quoting *Graves v. E. Cleveland*, 8th Dist. Cuyahoga No. 70675, 1997 Ohio App. LEXIS 326 (Jan. 30, 1997).

**{¶31}** There is no dispute that the city did not have actual notice of the defective manhole cover; the question is whether there are genuine questions of material fact as to whether the city had or should have had constructive notice. In order to charge a municipality with constructive notice, it must appear that the defect or condition existed "in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger[.]" *Tyler v. Cleveland*, 129 Ohio App.3d 441, 717 N.E.2d 1175 (8th Dist.1998), citing *Beebe v. Toledo*, 168 Ohio St. 203, 151 N.E.2d 738 (1958), paragraph two of the syllabus (discussing constructive notice of nuisance).

**{¶32}** The city argues that there is no evidence that it breached its duty regarding the manhole cover. It maintains that it had not received any other complaints about the manhole cover, nor did anyone else notify the city that he or she was injured from the manhole cover failing in some way. Thus, the city contends that without evidence that the manhole cover was defective for some time or notice of prior complaints or injuries,

there were no genuine issues of material fact as to whether the city had constructive notice.

**{¶33}** The city cites to *Sims v. Cleveland*, 8th Dist. Cuyahoga No. 71559, 1997 Ohio App. LEXIS 2943 (July 3, 1997), in support of its argument that it did not have constructive notice of the defective manhole. In *Sims*, the plaintiff fell into a manhole after stepping on a manhole cover that gave way. Later inspection by the city revealed that one-fourth of the concrete lip that the cover sat on was missing. The city employee testified that a concrete lip should be replaced when one-fourth of the lip is missing because it becomes a potential hazard, but it must be replaced when one-half of it is missing because it becomes a hazard. This court held:

> In the case sub judice, construing all evidence in favor of the appellant, the appellant has failed to provide any evidence as to the length of time the manhole [lip] had been in disrepair and thereby creating a nuisance in the sidewalk. The only evidence provided as to the reason for the disrepair was given by Mr. King in his deposition where he testified that the missing portion of the [lip] was caused by wear and tear. Mr. King also stated that there is no way to determine the length of time this condition existed. It appears that this condition could have occurred momentarily before the appellant fell into the manhole or that it could have existed for a considerable length of time. * * * This imprecision is insufficient to charge the city with constructive notice of the nuisance.

*Id.* at *5-6.

**{¶34}** This court distinguished *Sims* in *Tyler*, 129 Ohio App.3d 441, 717 N.E.2d 1175. In *Tyler*, the plaintiff stepped on a manhole cover on a sidewalk and fell eight feet into the manhole, sustaining injury. Later investigation revealed that the bricks and mortar beneath the manhole cover had deteriorated, causing it to collapse. The city

argued that it had not received any complaints or notice of the subject manhole. This court determined that questions of fact existed as to whether the city, based on constructive knowledge of the manhole cover's condition, could be liable under R.C. 2744.02(B)(2) for negligence with respect to a proprietary function. We concluded that questions of fact existed as to whether "the city is chargeable with notice of what reasonable inspection of the manhole would have disclosed if it had inspected the sewer, which could render it liable to Tyler for breach of its duty to maintain its sewer and water system pursuant to R.C. 2744.02(B)(2)." *Id.* at 446.

{¶35} In *Tyler*, we acknowledged that we had previously considered manhole collapse cases and affirmed summary judgment in favor of the municipality. *Id.*, citing *Sims* and *Austin* v. *Cleveland*, 8th Dist. Cuyahoga No. 66575, 1995 Ohio App. LEXIS 370 (Feb. 2, 1995). But we explained that [i]n those cases, the plaintiffs failed to present evidence from which a jury could find either actual or constructive notice to the city of the defective conditions of the sidewalks, and neither claimant raised an issue regarding the liability of the city for breach of proprietary functions. *Id.*

{¶36} Here, we find that this case is more analogous to *Tyler*, not *Sims*, 8th Dist. Cuyahoga No. 71559, 1997 Ohio App. LEXIS 2943. In this case, the Fedarkos have only alleged issues regarding the city's liability with respect to breach of a proprietary function. Further, the Fedarkos presented evidence that the manhole cover was "worn" from "normal wear and tear." And although Lally testified that there was no way to determine how long it was in that condition, it could not have happened "momentarily

before [Fedarko] fell into the manhole," as in *Sims*.  *Id.* at *5-6.  The manhole cover was made of steel.  It would not likely have become worn from normal wear and tear in a short period of time.  Based on the condition of the manhole cover, we agree with the trial court that the Fedarkos have presented sufficient evidence to create genuine issues of material fact as to whether the city had constructive notice of the manhole cover.

{¶37} Accordingly, the city's first and second assignments of error are overruled.

Inspections Relating to Governmental Functions

{¶38} In its third assignment of error, the city argues that the trial court erred when it denied its summary judgment motion because the trial court found that genuine questions of material fact existed as to whether the city had constructive notice; that is, whether it was reasonable for the city to fail to inspect the abandoned vault and manhole cover for two-and-one-half years and whether reasonable inspection would have discovered the potential danger.

{¶39} The city's third assignment of error is based upon its argument in the first two assignments of error that the manhole cover and water meter vault fall within the definition of a governmental function.  We have already determined, however, that the manhole cover and water meter vault were part of the city's water system and, therefore, was a proprietary function that the city can be held liable for under R.C. 2744.02(B)(2).

{¶40} The city's third assignment of error is overruled.

{¶41} Judgment affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
PATRICIA ANN BLACKMON, J., CONCUR