[Cite as *Grose v. Cleveland*, 2014-Ohio-4819.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101003**

**MATTHEW GROSE**

PLAINTIFF-APPELLEE

vs.

**CITY OF CLEVELAND**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-785118

**BEFORE:** Rocco, P.J., E.A. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** October 30, 2014

**ATTORNEYS FOR APPELLANT**

Barbara A. Langhenry
Director of Law
L. Stewart Hastings
Joseph F. Scott
Assistant Directors of Law
City of Cleveland
601 Lakeside Avenue
Room 106
Cleveland, Ohio 44114

**ATTORNEY FOR APPELLEE**

Jonathan S. Tsilimos
Lawrence Landskroner & Associates, L.L.C.
55 Public Square
Suite 1040
Cleveland, Ohio 44113

KENNETH A. ROCCO, P.J.:

{¶1} Defendant-appellant the city of Cleveland ("the City") appeals from the trial court's order denying the City's motion for summary judgment on the basis of statutory immunity. Because plaintiff-appellee Matthew Grose has established that an exception to statutory immunity applies in this case, we affirm the trial court's final judgment.

{¶2} Because this case involves an appeal from a grant of summary judgment, we recite the relevant facts in the light most favorable to the nonmoving party, Grose. *See Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

{¶3} Plaintiff-appellee Grose has lived at his residence on Holmden Avenue since 2003. Holmden Avenue is a one-way street that slopes steeply downward from west to east. Grose's home does not have a driveway, so he regularly parked his car along the south side of Holmden Avenue near his home.

{¶4} Grose began to notice surface water on Holmden Avenue and, on November 4, 2009, he sent an email to his city councilman about the water problem. In the email, Grose noted that the road was sinking in, and that there was always a steady stream of water running down the street. Grose also sent the email to the Mayor's Action Center and to Robert Mavec, a city employee in the Streets Department.

{¶5} According to Grose, the problem continued throughout the winter of 2009-2010. On December 2, 2010, Grose sent another email to his city councilman regarding the problem of surfacing water on Holmden Avenue, stating that a new water leak had sprung up on the road. Grose's concerns were forwarded to the Director of Public Utilities for the City. Grose asserts that by February 2011, the problem was still not remedied.

{¶6} On the night between February 1 and 2, 2011, a short but significant rise in the temperature washed away the snow and ice that had accumulated on the roadway in front of Grose's home. On February 3, 2011, Grose drove from his home to go to work. After work, he picked up his roommate, and they headed home. Neither Grose nor his roommate observed any snowy or icy condition as they approached their home on Holmden Avenue. Grose parked his vehicle on the street. After exiting his vehicle, he slipped on a patch of black ice on the street, landing on his back, and sustaining injury. Both Grose and his roommate averred that there was no ice anywhere else on the roadway except in the area of roadway where Grose had slipped on the ice. This was the same area of the roadway that Grose had complained about to the City in the past.

{¶7} Grose filed a complaint against the City on June 15, 2012, alleging that the City was negligent in failing to satisfy its duty under R.C. 2744.02(B)(3) to keep the public roadway on Holmden Avenue in good repair.[1] Grose obtained an expert report from civil engineer, Victor Dozzi ("the Dozzi Report"). Dozzi determined that on the date of the incident, the pavement was broken in the area where Grose fell. As a result, groundwater was able to seep up through the cracks and onto the surface of the street. The Dozzi Report explained that the water that seeped through the cracks froze on the street's surface as it was exposed to the cold. The ice on the street was limited to the area where water had seeped up through the pavement. The Dozzi Report concluded that the failure of the City to intercept the groundwater flow under the pavement allowed water to seep up onto the road's surface. The Dozzi Report further concluded that if the pavement at the site of the fall had been maintained so that it was sound and

---

[1]Grose also maintained an alternative theory of negligence in his complaint that is not relevant this appeal.

unbroken, there would have been no upward seepage of groundwater through the pavement and ice would not have formed on the surface.

{¶8} Pierre Haddad is the City's expert in this case and, at the time of the incident, he was working for the City as the Group Manager of the Advanced Planning and Hydraulics Unit. Haddad testified on behalf of the City and also prepared an expert report ("the Haddad Report"). Like the Dozzi Report, the Haddad Report opined that Holmden Avenue was experiencing surfacing water from underground, and that this water was finding its way out along the curb, under the pavement, and through the pavement cracks. The Haddad Report recommended that 300 feet of underdrain be installed along the north curb of Holmden Avenue to intercept the groundwater flow and conduct it away from the street. The underdrain was constructed after Grose's fall. To date, Grose avers that the water problem remains on Holmden Avenue notwithstanding the construction of the underdrain.

{¶9} Grose also deposed Robert Mavec, the City's Commissioner of Traffic Engineering and Commissioner of Streets. Mavec is the head of the Division of Streets, which is responsible for repairing potholes and sinking roadways within the City. Mavec was one of the recipients of the email from Grose that was sent in November 2009 regarding the deteriorating condition of Holmden Avenue and the presence of water on the road. At his deposition, Mavec reviewed a photograph depicting the area of Holmden Road where Grose fell and admitted that the photo depicted pavement that needed to be repaired.

{¶10} Following discovery, the City moved for summary judgment, asserting sovereign immunity. The trial court denied the City's motion. The City now appeals, setting forth a single assignment of error for our review:

The trial court erred as a matter of law when it failed to grant summary judgment in favor of the City for an alleged failure to prevent naturally occurring groundwater from freezing on a public road.

**{¶11}** Because this case involves an order granting summary judgment, we review the trial court's order de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment should be granted if (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, at ¶ 6.

**{¶12}** The moving party carries the initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, the court should not grant summary judgment. If the movant does meet its burden, summary judgment is warranted only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id.* at 293.

**{¶13}** R.C. Chapter 2744 grants governmental immunity to political subdivisions subject to certain exceptions, and we apply a three-tiered analysis to determine whether immunity applies. *Fedarko v. Cleveland*, 8th Dist. Cuyahoga No. 100223, 2014-Ohio-2531, ¶ 10. The first tier of the analysis applies the "general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function." *Caraballo v. Cleveland Metro. School Dist.*, 8th Dist. Cuyahoga No. 99616, 2013-Ohio-4919, ¶ 10. The second tier looks to whether an exception to immunity exists under R.C. 2744.02(B).

*Fedarko* at ¶ 10. Under the third tier, if an exception does exist, the political subdivision has the burden of demonstrating that one of the defenses under R.C. 2744.03 applies. *Id.*

{¶14} In the instant case, the parties agree that the City is a political subdivision under tier one. The issue here is whether an exception to immunity exists under R.C. 2744.02(B). Specifically, the parties dispute whether the following exception applies:

> Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their *negligent failure to keep public roads in repair* and other negligent failure to remove obstructions from public roads * * *.

R.C. 2744.02(B)(3). (Emphasis added.)

{¶15} The parties agree that groundwater is flowing downhill under Holmden Avenue. The parties also agree that the ice formed as a result of that water seeping up through the cracks in the roadway. But the City argues that Grose's case is actually about water drainage as opposed to the condition of the road's surface. In support of its argument, the City contends that it was able to remedy the problem on Holmden Avenue by installing a new drain system to reroute the groundwater away from the surface of Holmden Avenue. Grose has presented evidence that contradicts the City's assertion that the drain system has remedied the problem of water seeping up through the road's cracks onto Holmden Avenue. But regardless, the City's argument misses the mark; because Grose's complaint asserts that he was injured as a result of the City's negligent failure to keep the public road in repair, we must determine whether the record could support such a claim. *See Fink v. Twentieth Century Homes, Inc.*, 8th Dist. Cuyahoga No. 99550, 2013-Ohio-4916, ¶ 23 (analyzing whether the record supported plaintiff's claim categorization in a statutory immunity case).

{¶16} The proper inquiry is whether reasonable minds could conclude that the icy condition on Holmden Avenue would not have existed had the City repaired the cracks on the

road.[2] *See Todd v. Cleveland*, 8th Dist. Cuyahoga No. 98333, 2013-Ohio-101, ¶15 (explaining that keeping public roadways "in repair" under R.C. 2744.02(B)(3) includes repairing holes and crumbling pavement when a road is deteriorating). We answer that question in the affirmative.

{¶17} Grose points to evidence from both civil engineering experts to support his contention that the failure to repair the cracks in the road caused the icy condition. Both experts agreed that the ice that Grose fell on was caused by surfacing water seeping up through the cracks in the street. In his deposition, Haddad stated that the source of the water had to be from water surfacing through cracks and holes in the roadway. The Dozzi Report included photographs of the area of the road where Grose fell. These photographs show that this area of the road contained visible cracks and holes. The Dozzi Report concluded that if the pavement at the site of the fall had been maintained so that it was sound and unbroken, there would have been no upward seepage of groundwater through the pavement and ice would not have formed on the surface.

---

[2]Grose argues that we should analyze this case under the standard set forth in *Grimmer v. Rocky River*, 8th Dist. Cuyahoga No. 94271, 2010-Ohio-4683. Although that case involved ice on a roadway, the standard we articulated in that case was used to determine whether the ice constituted a nuisance under the old version of R.C. 2744.02(B)(3). Unlike the instant case, in *Grimmer* the plaintiff did not contend that the road itself was in disrepair. Rather, the ice on the road was caused by water flowing from a leaky fire hydrant. We decline to apply the test articulated in *Grimmer*, because it is ill-suited for analyzing whether statutory immunity applies when it is alleged that an icy condition is caused by the condition of the road itself. We similarly decline to apply a case that the City asks us to rely on, *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, because that case also deals with an "obstruction" on the road as opposed to an alleged failure to maintain the public roadway. *See Todd v. Cleveland*, 8th Dist. Cuyahoga No. 98333, 2013-Ohio-101, ¶ 14 ("The terms 'in repair' and 'obstructions' exist separately under R.C. 2744.02(B)(3) and provide two separate, independent bases for precluding statutory immunity with respect to public roads.").

**{¶18}** The City argues that Grose cannot prevail because roadways are not impervious to water, nor designed to never crack. The City also asserts that resurfacing Holmden Avenue would not solve the ongoing problem of the groundwater seeping up onto the road. But in the instant case, Grose has presented evidence that the cracks in the road where he fell constituted a road in "disrepair." Mavec conceded as much in his deposition. Both experts agreed that the water seeped through those cracks in the road. A reasonable factfinder could certainly conclude that the icy condition would not have existed if the City had repaired the cracks. And while the City asserts that a lasting solution to the problem would require a redesign of the road or a redesign of the road's drainage system, the City's brief does not support this contention with any citation to the record. Our review of the record leads us to conclude that there is a genuine issue of material fact on whether the icy condition would have existed had the City fixed the cracks in the road.

**{¶19}** But that is not the end of the analysis because, under the plain language of R.C. 2744.02(B)(3), the exception applies only if the City was negligent in failing to repair the cracks on Holmden Avenue. *See* R.C. 2744.02(B)(3) (exception to immunity exists for "*negligent* failure to keep public roads in repair"); *Todd v. Cleveland*, 8th Dist. Cuyahoga No. 98333, 2013-Ohio-101, ¶ 19. In a claim for negligence, a claimant is required to produce evidence demonstrating the existence of a duty, a breach of that duty, and that the breach was the proximate cause of the claimant's injury. *See Feldman v. Howard*, 10 Ohio St.2d 189, 196, 226 N.E.2d 564 (1967). And a "'municipal corporation is liable only for negligence in creating a faulty condition or in failing to repair, remove or guard against defects after receiving actual or constructive notice of their existence.'"[3] *Wilson v. Cleveland*, 8th Dist. Cuyahoga No. 98035,

---

[3] However, we question whether notice should continue to be required.

2012-Ohio-4289, 979 N.E.2d 356, ¶ 23, quoting *Graves v. E. Cleveland*, 8th Dist. Cuyahoga No. 70675, 1997 Ohio App. LEXIS 326 (Jan. 30, 1997).

{¶20} The City's argument in support of summary judgment focused solely on whether the icy condition was caused by a failure to repair the road, and at no point has the City made any argument on the issue of negligence. The City has, therefore, waived the issue of negligence for purposes of summary judgment. For the aforementioned reasons, we conclude that this case falls within the R.C. 2744.02(B)(3) exception to immunity. Under tier three, the City has not argued that any of the defenses under R.C. 2744.03 apply in this case. We, therefore, conclude that the trial court correctly granted summary judgment in this case and so we overrule the sole assignment of error.

{¶21} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

---

Because the City has an affirmative duty to keep its roads in repair, the City should take affirmative steps to discover defects.

Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
MELODY J. STEWART, J.,
CONCURS IN JUDGMENT ONLY