OHIO POWER CO., APPELLANT, *v.* VILLAGE OF ATTICA ET AL., APPELLEES.

90

(No. 411—Decided August 6, 1969.)

*Messrs. Day, Ketterer, Raley, Wright & Rybolt, Mr. John F. Buchman, Mr. Fred L. Forni, Messrs. Spitler & Flynn* and *Mr. Paul A. Flynn,* for appellant.

*Mr. Robert C. Carpenter,* for appellee village of Attica.

*Messrs. George, Greek, King, McMahon & McConnaughey, Mr. Robert P. Mone, Messrs. Tomb & Hering, Mr. Webb D. Tomb* and *Mr. Charles D. Hering, Jr.,* for appellee North Central Electric Cooperative, Inc,

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Seneca County rendered in an action for a declaratory judgment and for injunctive relief brought in 1961 by the Ohio Power Company, hereinafter referred to as Ohio Power, against the village of Attica, hereinafter referred to as the village, and North Central Electric Cooperative, Inc., hereinafter referred to as North Central. It is not clear from the record whether judgment was rendered on the pleadings or whether the cause was submitted by way of stipulation of evidence. This ambiguity may be the result of the passage of more than seven years between the filing of the petition and the entry of judgment. As the parties do not raise any issue as to the manner of submission and as a bill of exceptions has been filed which includes evidentiary documents without objection as to its content, we will consider that the cause was submitted to the trial court on this undisputed evidence.

Ohio Power is the successor holder of a franchise of indefinite duration granted by the village in 1919 giving it the right "to transmit electricity through and along the streets, alleys, and ways of the village" "for the purpose of furnishing to said village, the general public and private persons, light, heat, and power by electric currents." Ohio Power is also successor to a contract with the village executed in 1958 whereby it is obligated to provide a street lighting system for the village, and to provide extensions to the system upon written request of the village. By its express terms this agreement was to expire on June 30, 1968. At the time this action was brought Ohio Power was operating in the village under the terms and authority of both the franchise and the contract.

In 1959 land known as the Buckeye Village Addition, which had been supplied with electric service by North Central since prior to 1955, was annexed to the village. On April 13, 1961, the village enacted ordinance No. 126-A granting to North Central the right for ten years "to use the streets, avenues, alleys, lanes, sidewalks and all other public grounds and places of the village" for "the fur-

nishing of electric light, power and heat for the public and private use within the Buckeye Village Addition'' with the exception of certain specified lots. On the same date the village enacted ordinance No. 125-A authorizing a contract with North Central "to light the streets, avenues, alleys and public places in the Buckeye Village Addition," the contract to be effective for ten years from its execution. It does not appear in the record whether North Central has ever accepted the franchise granted by ordinance No. 126-A, executed the contract authorized by ordinance No. 125-A, or that it has furnished any electric service or street lighting pursuant to either ordinance.

Ohio Power is a corporation for profit organized and existing under the laws of Ohio as a public utility subject to regulation and control by the Public Utilities Commission. North Central is a corporation not for profit organized under the general corporation act of Ohio engaged in the business of acquiring and distributing electric energy. Among other things not here pertinent North Central's articles of incorporation, in their form before this action was brought, provided that the purpose of its incorporation was "to generate, manufacture, purchase, acquire and accumulate electric energy for its members and to transmit, distrbiute, furnish, sell and dispose of, such electric energy to its members *only* * * *." (Emphasis added.) The articles further provided that "any person, firm, corporation or body politic may become a member in the corporation by:" paying the membership fee, agreeing to purchase electric energy from the corporation, and agreeing to comply with the articles of incorporation and the code of regulations. In 1962, after this action was brought, the articles were amended by eliminating the word "only" after the word "members" in the clause defining to whom electric energy might be furnished and by adding the following proviso to such purpose clause:

"* * * provided, however, that nothing contained in this Article, or elsewhere in these Articles of Incorporation, shall be deemed or construed to prevent or prohibit the corporation from generating, manufacturing, purchas-

ing, acquiring or accumulating electric energy for non-members, or from transmitting, distributing, furnishing, selling or disposing of such electric energy to, or rendering services to non-members, nor to prohibit the corporation from executing and performing franchise or other contracts with political subdivisions or bodies politic providing for the furnishing of electric energy or rendering of services to such subdivisions or bodies, or the citizens thereof, in the manner prescribed by law.''

On these facts Ohio Power sought a declaration that ordinance No. 126-A is null and void, an order enjoining North Central from claiming any franchise rights under that ordinance, a declaration of Ohio Power's rights to furnish street lighting in the Buckeye Village Addition under the terms of its 1958 street lighting agreement, a declaration that ordinance No. 125-A is null and void, and an order enjoining the village from giving effect to that ordinance and enjoining North Central from asserting or claiming any street lighting rights thereunder. The trial court in its journal entry of judgment stated that, in its opinion, there are no constitutional or statutory prohibitions that prevent the village from granting to North Central the franchise or from contracting with North Central for the street lighting and ordered the petition dismissed. In its appeal from that judgment Ohio Power claims error of the trial court (1) in concluding, as a matter of law, that the village was authorized to enter into a franchise with North Central for the furnishing of electric energy to inhabitants of the Buckeye Village Addition and into a contract for street lighting in that area, and (2) in concluding, as a matter of law, that North Central was authorized to accept and claim rights under that franchise and to enter into that street lighting contract.

Ohio Power's primary claims under these assignments of error are that Section 4, Article XVIII of the Ohio Constitution controls the powers of a municipal corporation respecting public utility services within the municipality; that such article does not authorize a contract between a municipal corporation and a party which is not a public

utility to render these services; and that a corporation not for profit operating facilities for the supplying of electric energy does not have a legal duty to render adequate service to any and all persons within its operating area who may desire its services, is not subject to effective regulation by any duly constituted governmental authority as to adequacy of its service, reasonableness of its rates, or other important aspects of its service, and cannot, for such reasons, be a public utility within the meaning of Section 4, Article XVIII of the Ohio Constitution. Ohio Power also claims that the charter and contract contemplated, respectively, by ordinances No. 126-A and No. 125-A are not permissible under North Central's charter. North Central counters that Ohio Power has no standing either to claim *ultra vires* or to prosecute this declaratory judgment action.

It would seem at first blush that the provisions of Section 1702.12, Revised Code, that "no lack of, or limitation upon, the authority of a [nonprofit] corporation shall be asserted in any action except (1) by the state in an action by it against the corporation, (2) by or on behalf of the corporation against a trustee, an officer, or a member as such, or (3) by a member as such or by or on behalf of the members against the corporation, a trustee, an officer, or a member as such," would effectively prevent Ohio Power from raising the issue of *ultra vires*. This would probably be true if only the authority of North Central to accept a franchise or enter into a contract was involved. However, the primary and controlling issue is not so much the authority of North Central to do so as it is the authority of the village to grant a franchise to or contract with a party having the capacity which North Central has to enter into and perform such franchise and contractual agreements. *Local Telephone Co. v. Cranberry Mutual Telephone Co.*, 102 Ohio St. 524. It is apparent in determining the village's authority that no contractual relationship of Ohio Power is directly involved and that only the contractual relationships existing by and between the village and North Central are being tested. Although Ohio

Power does not have, nor does it claim, a monoply under its agreements, such contractual relationships are indirectly involved for they place Ohio Power in direct competition with North Central in furnishing the same services within the same area where North Central's continued competition will deprive Ohio Power of potential customers and thus cause it loss. In addition to the fact that such competition has been the subject of equitable or other relief in many of the cases cited in this opinion, the legality of the contractual relationships between the village and North Central raises a justiciable controversy between Ohio Power and North Central, which is properly the subject matter of a declaratory judgment action.

In pertinent part Sections 4 and 5, Article XVIII of the Ohio Constitution have read since 1912 as follows:

Section 4. "Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and *may contract with others for any such product or service.* The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants, *the service or product of any such utility.*" (Emphasis added.)

Section 5. "Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. * * *"

Reading Section 4 in its entirety it is obvious that the phrase "any such product or service" does not have reference to gas, electricity, water, etc., in and of themselves, but has reference instead to the product or service of *a public utility,* whatever that product might be, and such section has been so interpreted. *Ohio River Power Co.* v. *Steubenville,* 99 Ohio St. 421, and *East Ohio Gas Co.* v. *Public Util. Comm.,* 137 Ohio St. 225. The provisions of

Section 4, Article XVIII confer authority upon municipalities to contract with a public utility for supplying its product or service to the municipality or to its inhabitants, are self-executing, need not be supplemented by statutory provision, and control over the provisions of statutes inconsistent therewith. When such franchises or contracts are executed by and between a municipality and a public utility in the manner prescribed by Sections 4 and 5, they are binding upon both parties, and the terms thereof, or matters within the scope of such terms, are not subject to review by the Public Utilities Commission. *Link* v. *Public Util. Comm.*, 102 Ohio St. 336; *Local Telephone Co.* v. *Cranberry Mutual Telephone Co., supra* (102 Ohio St. 524); *Ohio River Power Co.* v. *Steubenville, supra* (99 Ohio St. 421); and *East Ohio Gas Co.* v. *Public Util. Comm., supra* (137 Ohio St. 225). See, also, *Galion* v. *Galion,* 154 Ohio St. 503. Additionally, by exception in the definition of public utility, Section 4905.02, Revised Code, effectively removes from supervision or regulation by the Public Utilities Commission "such other public utilities as operate their utilities not for profit." Compare, *Ashley Tri-County Mutual Telephone Co.* v. *New Ashley Telephone Co.*, 92 Ohio St. 336.

From these authorities we conclude that defendant village had no power to contract with North Central for electrical service for itself or its inhabitants unless North Central was at the time of the contract a public utility, but that neither the fact that it was a nonprofit corporation nor the fact that it was not subject to regulation or supervision by the public utilities commission would, by itself, deprive North Central of the status of a public utility.

The Supreme Court held in *Industrial Gas Co.* v. *Public Util. Comm.*, 135 Ohio St. 408, that "whether a corporation is operating as a public utility is determined by the character of the business in which it is engaged," and that "a public utility is bound to serve to the extent of its capacity those of the public who need the service and are within the field of its operations, at reasonable rates and without discrimination"; and Judge Williams said in his opinion in that case, page 412 *et seq.*:

"The change in the purpose clause of the charter does not of itself alter the real character of appellant's business; * * *. It is what the corporation is doing rather than the purpose clause that determines whether the business has the element of public utility. * * *
"* * * *

"Regardless of the right of the public to demand and receive service in a particular instance, the question whether a business enterprise constitutes a public utility is determined by the nature of its operations. Each case must stand upon the facts peculiar to it. A corporation that serves such a substantial part of the public as to make its rates, charges and methods of operations a matter of public concern, welfare and interest subjects itself to regulation by the duly constituted governmental authority. * * *"

In *Southern Ohio Power Co.* v. *Public Util. Comm.*, 110 Ohio St. 246, the Supreme Court held:

"2. To constitute a 'public utility,' the devotion to public use must be of such character that the product and service is available to the public generally and indiscriminately, *or* there must be the acceptance by the utility of public franchises *or* calling to its aid the police power of the state." (Emphasis added.)

In *Midwest Haulers, Inc.*, v. *Glander, Tax Commr.*, 150 Ohio St. 402, 405, by *per curiam* opinion, the Supreme Court declared:

"As its name indicates, the term, 'public service,' implies a public use and service to the public, and the principal determinative characteristic of a public utility is that of service to, or readiness to serve, an indefinite public which has a legal right to demand and receive the utility's services or commodities. * * *"

It is the fair intendment of the record that prior to the annexation of the Buckeye Village Addition North Central was serving its members *only*, in accordance with the specific powers set forth in its charter. We may also reasonably infer that its business was not then confined to the Buckeye Village Addition but extended to members in other areas. It will also be observed that membership

was open under its articles tò "any person, firm, corporation or body politic." The requirements of paying a membership fee, agreeing to purchase electric energy, and agreeing to comply with the articles of incorporation and code of regulations differ only slightly in form and less in substance from the requirements of almost any public utility, before providing service, that a deposit or installation charge be paid and that the consumer abide by the tariff and regulations pertaining to the utility. As in *Industrial Gas Co.* v. *Public Util. Comm.*, *supra* (135 Ohio St. 408), the members here, like the industries there, constituted a substantial part of the public in the areas where service was provided, and their membership requirements here, not unlike the individual contracts there, did not change the character of the business from one of public utility to one of private service, but, once met, entitled the member to demand and receive North Central's services. Such was the status of North Central immediately prior to the adoption of the subject ordinances. In our opinion it was then a public utility.

Moreover, the critical point in time in this case for determining the capacity of North Central as a public utility is the point of time when the legal relationship first arises which places in effect the provisions of Section 4, Article XVIII requiring that North Central be a public utility. That point of time is either when the franchise contemplated by ordinance No. 126-A or when the contract contemplated by ordinance No. 125-A becomes binding upon the parties. Under the provisions of ordinance No. 126-A, as well as by law, the franchise could not become a binding agreement until after the ordinance became effective and until the filing by North Central "with the clerk of said village of its acceptance in writing of each and all of the terms, provisions and requirements of this ordinance." Under the provisions of ordinance No. 125-A, as well as by law, the contract for street lighting could not become a binding agreement until due execution thereof. The record does not reveal that either of these events has taken place.

This point of time also becomes particularly pertinent in the fact situation here because the acceptance of a public franchise may serve to make a public utility out of a corporation which had not been one. *Southern Ohio Power Co.* v. *Public Util. Comm., supra* (110 Ohio St. 246). Ohio law does not allow the granting of a franchise permitting the use of the public ways for a private purpose. When North Central actually accepts the franchise from the village it will then be committed, if not theretofore committed, to serving the public. At that time, if not before, North Central will fulfill "the principal determinative characteristic of a public utility" "of service to, or readiness to serve, an indefinite public which has a legal right to demand and receive the utility's services or commodities." *Midwest Haulers, Inc.,* v. *Glander, Tax Commr., supra* (150 Ohio St. 402). Although regulation by constituted governmental authority may follow as an incident of and result from a corporation becoming a public utility, it is not one of the criteria therefor or a condition precedent to such status. However, at the time North Central accepts its franchise, if not before, it also comes within the plenary powers of regulation bestowed upon the village by Constitution and statute, or, upon default of exercise by the village, upon the Public Utilities Commission.

We conclude that either because North Central was a public utility prior to the time the ordinances in question were adopted and no change in such status has been shown or because the record is silent, and Ohio Power has failed to prove the controlling point of time when public utility status must exist, there is no showing of any illegality either in the adoption of the ordinances in question or in the franchise and street lighting contract contemplated by such ordinances. So far as the record is concerned the ordinances and such franchise and street lighting contract are authorized by the Constitution and by statute. Ohio Power would have been entitled to a declaratory judgment to this effect, but was not entitled to a declaratory judgment, as prayed for, that the ordinances are null and void, or that it has any rights to furnish street

100

lighting in the Buckeye Village Addition under the provisions of a contract which expired on June 30, 1968, prior to the trial court's judgment. Nor has Ohio Power proved any right to injunctive relief as prayed for.

For these reasons we find no error of the Common Pleas Court prejudicial to the appellant, Ohio Power Company, in any of the particulars assigned and argued, and its judgment dismissing the petition must be affirmed.

*Judgment affirmed.*

YOUNGER, J. (Presiding), and POTTER, J., concur.

POTTER, J., of the Sixth Appellate District, sitting by designation in the Third Appellate District.