DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff/Appellants, Shawn Thomas, his wife Jody Thomas, and their minor child, A.T. (collectively "Thomas") appeal the decision of the Wayne County Court of Common Pleas, which granted summary judgment in favor of Defendant/Appellee, City of Wooster ("City"). We affirm.
 {¶ 2} This case arose after Shawn Thomas had an unfortunate accident on a bridge on State Route 83 in the City in March 2004. In his complaint, Thomas asserts that "due to the icy condition of the bridge, [he] lost control of his truck, struck the concrete median barrier and rolled over two and a half times" causing severe injuries. Thomas's complaint asserts claims for nuisance and loss of *Page 2 
consortium by Jody Thomas and A.T.. On September 28, 2006, the City moved for summary judgment on the grounds of the statute of limitations and sovereign immunity. On June 11, 2007, Thomas filed his brief in opposition. On June 26, 2007, the trial court granted summary judgment in favor of the City, finding there to be no genuine issue of material fact that the City was immune from Thomas's claims and that the City had not acted negligently ("Judgment Entry").
 {¶ 3} Thomas timely appealed the Judgment Entry and raises one assignment of error.
 Assignment of Error "The trial court erred by granting summary judgment in favor of [the City]."
 {¶ 4} Thomas asserts that the trial court erred in granting summary judgment in favor of the City because there are genuine issues of material fact as to: (1) whether the City negligently failed to remove an obstruction from a public road, thereby triggering an exception to its immunity protection under R.C. 2744.02(B)(3); and (2) whether the City's methods of detecting and treating conditions on its roads required discretion, policy-making, or judgment so as to reestablish immunity under R.C. 2744.03(A)(5). Specifically, Thomas argues that naturally accumulated ice is an obstruction in the road and that the City acted negligently by failing to use the latest technology and techniques to detect and treat ice on its roads prior to formation of the obstruction. Thomas further maintains that a decision to apply salt is not a discretionary decision and even if it *Page 3 
was that the City's discretion was exercised in a wanton or reckless manner because the City "failed to avail [itself] of weather prediction resources and modern treatment practices that would have allowed the City to respond to ice issues before an accident occurred." (Emphasis sic).
 {¶ 5} As we stated in Craddock v. Flood Co., 9th Dist. No. 23882,2008-Ohio-112:
 "In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. In applying this standard, evidence is construed in favor of the nonmoving party, and summary judgment is appropriate if reasonable minds could only conclude that judgment should be entered in favor of the movant. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 686-87. Before the trial court may consider whether the moving party is entitled to judgment as a matter of law, however, it must determine whether there are genuine issues of material fact for trial. Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, at ¶ 12." Craddock at ¶ 4.
 {¶ 6} The moving party "`bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.'" Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, quotingDresher v. Burt (1996), 75 Ohio St.3d 280, 293. "The nonmoving party then has a reciprocal burden to set forth specific facts, by affidavit or as otherwise provided by Civ.R. 56(E), which demonstrate that there is a genuine issue for trial." Craddock at ¶ 5, citing Byrd at ¶ 10. *Page 4 
 {¶ 7} We set forth the general rule with regard to the sovereign immunity of a political subdivision in Johnson v. Calhoun, 9th Dist. No. 23725, 2008-Ohio-549:
 "In determining whether a political subdivision is immune from liability, this Court must engage in a three-tier analysis. Cater v. Cleveland
(1998), 83 Ohio St.3d 24, 28. The first tier is the premise under R.C. 2744.02(A)(1) that:
 "`[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.'
 * * *
 "The second tier involves the five exceptions set forth in R.C. 2744.02(B), any of which may abrogate the general immunity delineated in R.C. 2744.02(A)(1). Cater, 83 Ohio St.3d at 28. Lastly, under the third tier, `immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies. Id.'" Johnson at ¶ 6.
 {¶ 8} Here, it is undisputed that the City is immune under the first tier of analysis. Neither the City nor Thomas argue otherwise and the trial court so found.
 {¶ 9} As to the second tier of Cater, Thomas argues that the applicable exception to the City's immunity is set forth in R.C.2744.02(B)(3), which states:
 "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows: *Page 5 
 "(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge." (Emphasis added).
 {¶ 10} The trial court considered R.C. 2744.02(B)(3) and found:
 "[The] City * * * was involved in a governmental function of removing snow from roads and bridges. The Court further finds that there is no evidence of negligence in the process in which they removed snow on March 8, 2004.
 "Because the Court finds there was no negligence on the part of the [City], and further finds that Defendants are under the umbrella of immunity granted by the Ohio Revised Code § 2744.02, [the City is] entitled to judgment as a matter of law. There are no genuine issues of fact left to be decided and the Motion for Summary Judgment is Granted."
We agree with the trial court and hold that there is no genuine issue of material fact to establish that the City was negligent thereby causing it to lose its immunity protection under the second tier of theCater analysis. We also hold that there is no genuine issue of material fact that, even if negligent, the City reinstated its immunity protection under the third tier of the Cater analysis. Specifically, we hold: (1) that the City did not negligently "fail to remove obstructions from public roads," in violation of R.C. 2744.02(B)(3); (2) that the City properly used its discretion in determining how to diagnose and treat its roads so as to reinstate any lost immunity; and (3) that the City did not exercise its discretion in a wanton *Page 6 
or reckless manner so as to negate its reinstated immunity. See R.C.2744.03(A)(5).
 {¶ 11} We initially note that the Thomas's complaint asserts two claims-nuisance pursuant to R.C. 723.01 and loss of consortium, yet Thomas's argument on appeal is that nuisance analysis should not apply because the legislature changed the wording of R.C. 723.01 to remove use of the word "nuisance" and adopted the definitions set forth in R.C.2744.02, which includes the "obstructions" language of R.C.2744.02(B)(3) set forth above. Thomas then urges us to determine that the ice was an obstruction, that the City had a duty to remove it in a particular way, and that the City breached that duty causing harm to Thomas. Alternatively, Thomas urges us to determine that the City's road condition diagnosis and treatment methods were not discretionary and/or were performed in this case in a wanton and reckless manner.
 {¶ 12} We hold that naturally accumulating ice is not an obstruction under R.C. 2944.02(B)(3). Thomas has failed to convince this Court that the legislature intended to change the law regarding the natural accumulation of ice when it removed the word "nuisance" from R.C. 723.01
and adopted the definitions set forth in R.C. 2744.02.
 {¶ 13} As we have held that naturally accumulated ice is not an obstruction within the meaning of R.C. 2744.02(B)(3), there is no evidence that the City breached a statutory duty to remove any ice from the bridge on March 8, 2004. *Page 7 
Therefore, to demonstrate that the City is liable for negligence, Thomas must establish the existence of another duty owed him by the City to remove naturally accumulated ice. See Wade v. Lorain MetropolitanHousing Auth, Inc. (Sept. 11, 1991), 9th Dist. No. 90CA004954, citingPorter v. Miller (1983), 13 Ohio App.3d 93 (noting that absent a specific contractual duty, the City has no duty to clear naturally accumulated ice and snow); LaCourse v. Fleitz (1986), 28 Ohio St.3d 209;Jones v. Cincinnati Metropolitan Housing Authority (Apr. 27, 1988), 1st Dist. No. C-870454. Here, there is no evidence of a contractual duty to clear ice and no evidence that the alleged ice on the bridge was anything other than naturally accumulated.
 {¶ 14} Moreover, even if the natural accumulation of ice could be found to create a duty upon the City to remove it, there is no evidence that the City was required to diagnose and treat road conditions in any specific manner and/or that the method by which the City chose to fulfill its governmental function of maintaining the roadways was a deviation from any standard of care and therefore, a breach of a duty. The deposition of the ODOT official merely provides guidelines by which ODOT diagnoses and treats its road conditions. It does not create a standard of care for Ohio municipalities. That the City could have adopted other methods, that may or may not have been more effective, does not establish a genuine issue of material fact that the City breached any standard of care or duty. Indeed, it is precisely to address this issue that the legislature *Page 8 
adopted R.C. 2744.03(A)(5), the third tier of the Cater sovereign immunity analysis. Since there was no standard of care for road condition diagnosis and treatment in March 2004, any decision related thereto can only be left to the discretion of the City.
 {¶ 15} Thomas also failed to establish that the City used its discretion in a wanton or reckless manner because "[t]he standard for showing wanton misconduct is * * * high." Fabrey v. McDonald VillagePolice Dept. (1994), 70 Ohio St.3d 351, 356. "[W]anton misconduct [is] the failure to exercise any care whatsoever." Id., citing Hawkins v.Ivy (1977), 50 Ohio St.2d 114, syllabus. "`[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.'"Fabrey at 356, quoting Roszman v. Sammett (1971), 26 Ohio St.2d 94,96-97. "Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." Fabrey at 356, citing Roszman, 26 Ohio St.2d at 97. There was no evidence before the trial court to establish that the City (through Frank Gilbert, City maintenance manager) acted in such a manner knowing that its conduct would probably result in injury.
 {¶ 16} Thomas's brief in opposition to the City's motion for summary judgment points to Gilbert's deposition testimony that he was aware of other ways to treat winter road conditions in the industry, including pretreatment with a brine solution. Thomas's brief in opposition also points to Gilbert's description of the *Page 9 
City's then-existing road treatment plan and argues that it is less than state-of-the-art and "woefully inadequate considering current technology." Neither of these arguments demonstrates that the City, through Gilbert, utilized its then-existing road treatment plan knowing that it would result in injury, thereby negating its immunity under the third tier of Cater.
 {¶ 17} Based on the foregoing, Thomas's assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 10 
Costs taxed to Appellants.
CARR, P. J. CONCURS
 MOORE, J. CONCURS IN JUDGMENT ONLY *Page 1