[Cite as *Nordonia Landscape Supplies, L.L.C. v. Akron*, 2020-Ohio-2809.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

NORDONIA LANDSCAPE SUPPLIES, LLC

    Appellant

    v.

CITY OF AKRON

    Appellee

C.A. No.    29618

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2019-01-0254

DECISION AND JOURNAL ENTRY

Dated: May 6, 2020

HENSAL, Judge.

{¶1} Nordonia Landscape Supplies, LLC ("NLS") has appealed a judgment of the Summit County Court of Common Pleas that granted judgment on the pleadings to the City of Akron. For the following reasons, this Court affirms.

I.

{¶2} According to NLS, the City of Akron's purchasing department requested a quote for road salt in September 2018. NLS did not have enough salt on hand for the entire order, so it sent the City two quotes, one for the salt it already had and another for salt that it would have to purchase and have shipped from Egypt. After not hearing back from the City for several days, NLS told the purchasing agent that it would have to sell the salt to other entities. The purchasing agent, however, replied that the City would take the salt. The purchasing agent later sent back a signed copy of the quote for the salt NLS had on hand. In reliance on the purchasing agent's

statements, NLS also had salt shipped from Egypt and purchased a couple of dump trucks to deliver that salt.

{¶3} Over the course of the next month, the City did not pay NLS. At the end of the month, it told NLS that it did not want the salt. According to NLS, because the winter ended up being mild, it eventually had to sell the salt for less than its arrangement with the City. NLS subsequently sued the City for breach of contract and promissory estoppel. The trial court granted judgment on the pleadings to the City on NLS's promissory estoppel claim because it determined that the City was engaged in a governmental function when it inquired about the salt and the doctrine of promissory estoppel is inapplicable against a political subdivision that is engaged in a governmental function. NLS later dismissed its breach of contract claim. It has appealed the trial court's judgment on its promissory estoppel claim, assigning as error that the court incorrectly determined that procurement of road salt is a governmental function.

II.

THE TRIAL COURT ERRED IN FINDING THAT THE PROCUREMENT OF ROAD SALT IS A GOVERNMENTAL FUNCTION.

{¶4} NLS acknowledges that the Ohio Supreme Court has held that the doctrine of promissory estoppel is inapplicable against a political subdivision if the political subdivision was engaged in a governmental function. *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, syllabus. It argues that rule does not apply in this case because the City was engaged in a proprietary function instead of a governmental function. *See State ex rel. Upper Scioto Drainage & Conservancy Dist. v. Tracy*, 125 Ohio St. 399, 405 (1932) (holding that State could be estopped because it was engaging in a proprietary function). According to NLS, because a city is not liable if it fails to remove snow and ice from a road, the procurement of road salt is not a governmental function. The parties agree that this Court should apply the definitions of governmental function

and proprietary function set forth in Revised Code Section 2744.01 to resolve this issue.[1] We review a trial court's ruling on a motion for judgment on the pleadings de novo. *State ex rel. Maher v. City of Akron*, 9th Dist. Summit No. 28761, 2018-Ohio-4310, ¶ 8.

{¶5} Under Section 2744.01(C)(1), a "[g]overnmental function" includes the functions specified in Section 2744.01(C)(2) or a function that meets one of three criteria. Those criteria are a function that (1) "is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;" (2) "is for the common good of all citizens of the state;" or (3) "promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function." R.C. 2744.01(C)(1)(a-c). A "[p]roprietary function" includes certain functions specified in Section 2744.01(G)(2) and functions that are both not described or specified under the definition of a governmental function and "that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1)(b).

{¶6} The trial court determined that the procurement of road salt is a governmental function because Section 2744.01(C)(2)(e) specifies that "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds" is a governmental function. The court reasoned that, because the

---

[1] The parties both contend that whether the City was engaged in a governmental or proprietary function should be resolved by applying the definitions in Section 2744.01. Although applying those definitions requires some review of Chapter 2744, this case does not involve the political subdivision immunity analysis set forth in that chapter. Instead, it involves a common law rule that the Ohio Supreme Court has continued to apply even after the enactment of Chapter 2744. *Hortman* at ¶ 13, 25.

maintenance of roads is a governmental function, and salt is needed to maintain the roads, procurement of road salt is also a governmental function.

{¶7} NLS argues that the word "maintenance" in Section 2744.01(C)(2)(e) means only to engage in general repair and upkeep of the roads, which is the definition of "maintain[.]" It notes that courts have held that a political subdivision cannot be held liable for failing to remove snow and ice from a road under Section 2744.02(B)(3). *See Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, ¶ 11, 30; *Greslick v. Sudano*, 8th Dist. Cuyahoga No. 73353, 1998 WL 896294, *3 (Dec. 24, 1998). According to NLS, if a political subdivision is not liable for failing to clear snow and ice from the roads, snow and ice removal must not be one of its sovereign obligations. Thus, a political subdivision must not be performing a governmental function when it removes snow and ice from a road. Purchasing salt to assist with the removal of snow and ice, therefore, also does not fall within a political subdivision's governmental functions.

{¶8} NLS also argues that the removal of snow and ice fits squarely within the definition of a proprietary function under Section 2744.01(G)(1)(b) because it is an activity "customarily engaged in by nongovernmental persons." It argues that, like private property owners, a political subdivision may voluntarily choose to remove naturally accumulating snow and ice from public roads to make its property safer and more accessible, but it has no legal duty to do so.

{¶9} We do not agree that, because a city is not liable for failing to remove ice and snow from a road, it is not engaging in a governmental function when it performs that task. Section 2744.02(A)(1) provides that political subdivisions are immune from liability when they are engaged in either governmental or proprietary functions. Section 2744.02(B) provides certain exceptions to that general rule, one of which is that a political subdivision is liable for its "negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public

roads[.]" R.C. 2744.03(B)(3). The reason that courts have concluded that political subdivisions are not liable for failing to remove snow and ice under that language is because snow and ice do not constitute "obstructions[.]" *Howard* at ¶ 30; *Greslick* at *3. Those cases do not suggest that the removal of snow and ice from a road is not a governmental function.

{¶10} Upon review of Section 2744.01(C), we conclude that the removal of snow and ice from public roads is a governmental function for multiple reasons. *See Thomas v. Wooster*, 9th Dist. Wayne No. 07CA0059, 2008-Ohio-1464, ¶ 14 (stating that removing ice from a bridge would be within a city's governmental function of maintaining the roadways). First, using NLS's definition of "maintenance[,]" a political subdivision is engaged in the "upkeep" of a road when it removes snow and ice from the road. R.C. 2744.01(C)(2)(e). Second, the removal of snow and ice from public roads "is for the common good of all citizens of the state" in that it makes travelling by motor vehicle more convenient and safer. R.C. 2744.01(C)(1)(b). Third, the removal of snow and ice from roads promotes or preserves public safety, it is an activity that is not customarily engaged in by nongovernmental persons, and it is not specified as a proprietary function in Section 2744.01(G)(2). R.C. 2744.01(C)(1)(c). Although NLS correctly notes that private property owners customarily engage in the removal of snow and ice from their properties, they do not customarily engage in the removal of snow and ice from public roads, which is the specific function at issue in this case.

{¶11} Because the removal of snow and ice from public roads is a governmental function, we conclude that the acquisition of salt as a supply to aid in that activity is also a governmental function. We, therefore, conclude that the trial court correctly determined that NLS's promissory estoppel claim against the City is precluded under *Hortman v. Hortman*, 110 Ohio St.3d 194, at syllabus. NLS's assignment of error is overruled.

III.

**{¶12}** NLS's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

WARNER MENDENHALL and LOGAN TROMBLEY, Attorneys at Law, for Appellant.

EVE V. BELFANCE, Director of Law, and DAVID HONIG, BRIAN D. BREMER, and KIRSTEN L. SMITH, Assistant Directors of Law, for Appellee.