[Cite as *Georgantonis v. Reading*, 2020-Ohio-3961.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KYRIAKOS GEORGANTONIS, | : | APPEAL NO. C-190615 |
| | | TRIAL NO. A-1805317 |
| DIAMANTO GEORGANTONIS, | : | |
| ELENI GEORGANTONIS, | : | *O P I N I O N.* |
| PANAGIOTIS GEORGANTONIS, | : | |
| and | : | |
| YIANNI GEORGANTONIS, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| CITY OF READING, OHIO, | : | |
| Defendant-Appellee, | : | |
| and | : | |
| HUBBELL, INC., | : | |
| HUBBELL LENOIR CITY, INC., | : | |
| SHELL OIL COMPANY, | : | |
| STRONGWELL CORPORATION, | : | |
| LONE STAR INDUSTRIES, INC., | : | |
| RICHARDS ELECTRIC SUPPLY CO., INC., | : | |
| and | : | |
| JOHN OR JANE DOES, | : | |
| Defendants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: August 5, 2020

*Flagel & Papakirk LLC*, *James Papakirk* and *Gregory E. Hull,* for Plaintiffs-Appellants,

*Schroeder, Maundrel, Barbiere & Powers*, *Lawrence E. Barbiere* and *Katherine L. Barbiere*, for Defendant-Appellee.

**MYERS, Presiding Judge.**

{¶1} Kyriakos Georgantonis, Diamanto Georgantonis, Eleni Georgantonis, Panagiotis Georgantonis, and Yianni Georgantonis ("the plaintiffs") appeal the decision of the trial court granting a Civ.R. 12(C) motion for judgment on the pleadings in a personal-injury case in favor of defendant-appellee, the city of Reading, Ohio, based on governmental immunity.

## I.  Factual and Procedural Background

{¶2} On October 4, 2016, Kyriakos Georgantonis, an employee of the Pastrimas Painting Company, was painting the side of a building on West Benson Street in Reading, Ohio.  Georgantonis was working from the platform of a scissor lift raised to a height of approximately 20 feet, which he had moved into place on the sidewalk in front of the building.

{¶3} When Georgantonis parked the scissor lift, one of the tires of the scissor lift was positioned on top of the cover of an electric service box that had been installed by the city.  As Georgantonis was working, the cover of the service box fractured, causing the scissor lift to topple over and crash onto the sidewalk and causing Georgantonis to fall to the sidewalk and sustain injuries.

{¶4} The plaintiffs filed a complaint and an amended complaint, alleging negligence claims against the city, and products-liability claims against companies involved in the manufacturing and/or supply of the service box.

{¶5} The city moved for judgment on the pleadings.  The city argued that it was entitled to immunity on the plaintiffs' claims because their allegations of negligence concerned the maintenance and repair of a public sidewalk, which is a governmental function.  The plaintiffs opposed the city's motion, arguing that the installation, inspection and maintenance of the service box were proprietary

functions. The plaintiffs also filed a motion for partial summary judgment against the city, challenging the city's claim of immunity and seeking judgment as to liability.

{¶6} The trial court determined that the city was entitled to immunity because the maintenance of the city's sidewalk was a governmental function, and that even if the amended complaint alleged injury in connection with the city's street-light system, the provision of street lights is a governmental function. The court granted judgment on the pleadings in favor of the city and overruled the plaintiffs' motion for partial summary judgment. The plaintiffs now appeal.

{¶7} In a single assignment of error, the plaintiffs argue that the trial court erred in granting judgment on the pleadings in favor of the city and in denying partial summary judgment in their favor on the issue of governmental immunity

## II. Motion for Judgment on the Pleadings

{¶8} Dismissal on a Civ.R. 12(C) motion for judgment on the pleadings is proper when a court construes as true the material allegations in the complaint, along with all reasonable inferences to be drawn therefrom, and finds, beyond doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Retirement Corp. of Am. v. Henning*, 1st Dist. Hamilton No. C-180643, 2019-Ohio-4589, ¶ 15. We review a trial court's ruling on a Civ.R. 12(C) motion for judgment on the pleadings de novo. *Steele v. Cincinnati*, 1st Dist. Hamilton No. C-180593, 2019-Ohio-4853, ¶ 14.

{¶9} A trial court may grant a motion for judgment on the pleadings on the basis of an affirmative defense such as immunity where the complaint bears conclusive evidence that the action is barred by the defense. *Id.* at ¶ 15. A court may not grant a motion for judgment on the pleadings unless the pleadings "obviously or conclusively" establish the affirmative defense. *Id.*; *Cristino v. Bur. of Workers' Comp.*, 2012-Ohio-4420, 977 N.E.2d 742, ¶ 21 (10th Dist).

4

### III. Immunity under R.C. Chapter 2744

### A. Three-Tiered Analysis

{**¶10**}  R.C. Chapter 2744 establishes a three-tiered analysis for determining whether a political subdivision, such as the city, is immune from liability.  *R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, 1 N.E.3d 833, ¶ 8 (1st Dist.); *Steele* at ¶ 17.  First, R.C. 2744.02(A)(1) sets forth a general grant of immunity for political subdivisions for damages in a civil action resulting from any act or omission of a political subdivision or employee in connection with a governmental or proprietary function.  Second, R.C. 2744.02(B) sets forth various exceptions that, if applicable, remove the initial grant of immunity.  And third, if an exception applies to remove immunity, immunity can be reinstated if the political subdivision can show that one of the defenses contained in R.C. 2744.03 applies.

{**¶11**}  The parties do not dispute that the city was entitled to an initial grant of immunity under R.C. 2744.02(A)(1).  But the plaintiffs contend that the exception set forth in R.C. 2744.02(B)(2) applies to remove that immunity.  R.C. 2744.02(B)(2) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to *proprietary* functions of the political subdivisions."  (Emphasis added.)  The plaintiffs argue that the city was engaging in a proprietary function when it established a street-light system, and that the city negligently failed to inspect and maintain components of that system, including the cover of the service box.  The city argues that the operation and maintenance of a street-light system is a *governmental* function, and that, regardless, the plaintiffs' amended complaint alleged negligence related to sidewalk maintenance, which is specifically delineated as a governmental function.

### 1. Governmental Function

{**¶12**}  R.C. 2744.01(C)(1) defines a governmental function:

"Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

(b) A function that is for the common good of all citizens of the state;

(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or *not* customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

(Emphasis added.) R.C. 2744.01(C)(2) lists specific examples of governmental functions, including "[t]he regulation of the use of, and the *maintenance and repair of*, roads, highways, streets, avenues, alleys, *sidewalks*, bridges, aqueducts, viaducts, and public grounds." (Emphasis added.) *See* R.C. 2744.01(C)(2)(e).

## 2. Proprietary Function

{¶13} R.C. 2744.01(G)(1) defines a proprietary function:

"Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that *are* customarily engaged in by nongovernmental persons.

(Emphasis added.) R.C. 2744.02(G)(2) lists specific examples of proprietary functions, including "[t]he establishment, maintenance, and operation of a *utility,*

6

*including, but not limited to*, *a light*, gas, power, or heat *plant*, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system." (Emphasis added.) R.C. 2744.02(G)(2)(c).

### B. Sidewalk Maintenance

{¶14} The city claims that the allegations of the amended complaint establish that any negligence was a result of its engaging in a governmental function, sidewalk maintenance. Therefore, it claims immunity as a matter of law.

{¶15} In *Burns v. City of Upper Arlington*, 10th Dist. Franklin No. 06AP-680, 2007-Ohio-797, the plaintiff was injured as she stepped onto a manhole cover set in the sidewalk that led into the city's sewer system. *Burns* at ¶ 12. The Tenth District held that the city of Upper Arlington was engaged in a governmental function because the manhole cover was part of the sidewalk. *Id.* at ¶ 16. The court concluded that the city was entitled to immunity because "the conduct about which [plaintiff] complains was the maintenance of a sidewalk, and not the maintenance of a sewer." *Id.* at ¶ 15. The court stated:

> Although the manhole cover * * * was intended to provide access to the sewer system, it was not, in and of itself, a part of that system. It was, instead, intended to form part of the walkway for pedestrian traffic to use, and was therefore part of the sidewalk.

*Id.*

{¶16} In *Evans v. Cincinnati*, 1st Dist. Hamilton No. C-120726, 2013-Ohio-2063, the plaintiff tripped on a broken-off signpost located on a city sidewalk. *Id.* at ¶ 1. The plaintiff asserted that sign maintenance was a proprietary function because signs on streets are customarily maintained by private persons. *Id.* at ¶ 11. This court rejected the plaintiff's argument, pointing out that R.C. 2744.01(G)(1)(a) explicitly provides that to be proprietary, an activity must not be listed as governmental, and sidewalk maintenance is specifically listed as governmental in

7

R.C. 2744.01(C)(1)(e). *Id.* at ¶ 12. We found that, as in *Burns*, the conduct about which the plaintiff complained—the city's "failure to keep the sidewalk free of obstructions like jagged signposts or manhole covers—falls within the ambit of the city's responsibilities in connection with sidewalks." *Id.* at ¶ 12. We held that the city was, therefore, entitled to immunity. *Id.* at ¶ 13. *See Needham v. Columbus*, 10th Dist. Franklin No. 13AP-270, 2014-Ohio-1457 (holding that the city's actions in failing to remove from the sidewalk a bracket that had become detached from a trash receptacle or to replace the trash receptacle were part of the city's governmental functions to maintain and repair sidewalks).

{¶17} Here, the allegations in the plaintiffs' amended complaint related to a defect in the sidewalk surface, rather than a defect in the street-light system contained within the service box below the sidewalk. The plaintiffs alleged that the cover of the service box was flush with the surface of the sidewalk, that the cover was designed for use in "paved pedestrian areas, such as sidewalks," and that, when the scissor lift was parked on the sidewalk, one of its tires was parked on the cover of the service box when the cover fractured, causing the scissor lift to topple onto the sidewalk. As in *Evans* and *Burns*, the conduct about which the plaintiffs complain implicates the city's responsibilities in connection with sidewalks. *See Evans* at ¶ 10; *Burns* at ¶ 15.

{¶18} The plaintiffs direct us to *Scott v. Columbus Dept. of Pub. Util.*, 192 Ohio App.3d 465, 2011-Ohio-677, 949 N.E.2d 552 (10th Dist.), where the Tenth District reversed the trial court's Civ.R. 12(B)(6) dismissal of a plaintiff's complaint against the city on immunity grounds. The *Scott* plaintiff alleged that he stepped on an improperly attached manhole cover in a sidewalk, causing his leg to drop into the manhole. The Tenth District held that it was not beyond doubt that the plaintiff could prove a set of facts, consistent with his complaint, establishing the city's liability with respect to the maintenance of the city sewer system, a specifically

8

designated proprietary function. *Id.* at ¶ 11 and 18. The court found the case to be distinguishable from *Burns* because the plaintiff alleged negligence with respect to the city's maintenance of the underlying support for the manhole cover, as opposed to *Burns* which involved negligence relating to the manhole cover itself. *Id.* at ¶ 16; *see Fedarko v. Cleveland*, 2014-Ohio-2531, 12 N.E.3d 1254 (8th Dist.) (distinguished *Burns* because the *Fedarko* plaintiff stepped onto a manhole cover and fell into the manhole whereas the plaintiff in *Burns* tripped on a manhole in a sidewalk and fell onto the sidewalk). Here, however, the plaintiffs made no allegation that the city negligently maintained the underlying support for the service box cover or the street light components within the service box. Rather, the plaintiffs alleged that the cover itself fractured, causing Georgantonis to fall onto the sidewalk.

{¶19} The plaintiffs cite two cases, *Martin v. Gahanna*, 10th Dist. Franklin No. 06AP-1175, 2007-Ohio-2651, and *Parker v. Distel Const., Inc.,* 4th Dist. Jackson No. 10CA18, 2011-Ohio-4727, for the proposition that several courts "have rejected the argument that the alignment of a cover within a sidewalk was somehow part of the sidewalk." However, neither of the cited cases involved a sidewalk or involved the alignment of a cover, and each case involved a plaintiff who fell through an uncovered entry and encountered the underground system below. In *Martin*, the plaintiff stepped into an uncovered sewer drain located in the street, and in *Parker*, the plaintiff fell into an uncovered pit located at the side of a city water meter. In *Martin*, the court held that the need to inspect and replace missing components for the safe operation of the storm-water system related to the maintenance and upkeep of a sewer system, which is specifically designated a proprietary function. *Martin* at ¶ 17. In *Parker*, the court held that the lid of the water-meter pit was a safety feature of the underground system that protected the public from falling into holes that led underground and that therefore the lid was part of the maintenance of the water-supply system, again, a specifically designated proprietary function. *Parker* at ¶ 23.

9

Unlike *Martin* and *Parker*, the plaintiffs here did not allege that an injury occurred anywhere other than on a sidewalk or that the injury occurred after a fall through an uncovered entry into an underground sewer or storm water system. *See Parker* at ¶ 17 and 23 (distinguishing *Burns* because the plaintiff in *Parker* had, like the plaintiffs in both *Martin* and *Scott*, fallen through a hole and encountered the underground system).

{¶20} Here, the plaintiffs complain that Georgantonis was injured when the cover of the service box, which functioned as part of the sidewalk, failed. The allegations relate to the city's maintenance of the sidewalk, which is an enumerated governmental function under R.C. 2744.01(C)(2)(e). Therefore, the city is entitled to immunity.

### C. Street Lighting

{¶21} Even if the plaintiffs' allegations could be read to relate to the operation and maintenance of the city's street-lighting system, we hold that street lighting is a governmental function under R.C. 2744.01(C)(1)(b) and (c).

### 1. Utility

{¶22} The plaintiffs argue that street lighting is a proprietary function under R.C. 2744.02(G)(2)(c) because it is a "utility." They acknowledge that the statute lists certain types of utilities (such as light or power plants), but they contend that the statute's use of the term "utility" without a modifier, suggests that "utility" is not limited to utility plants or public utilities. A "utility" is defined as a "business enterprise that performs an essential public service and this is subject to governmental regulation." *Black's Law Dictionary* (11th Ed.2019). They assert that their amended complaint alleged that the city's street-lighting system is a utility within the meaning of the statute. However, while the factual allegations of a complaint must be taken as true, unsupported legal conclusions are insufficient to withstand a Civ.R. 12(C) motion. *Johnson-Newberry v. Cuyahoga Cty. Child &*

*Family Servs.*, 2019-Ohio-3655, 144 N.E.3d 1058, ¶ 14 (8th Dist.); *Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Servs.*, 1st Dist. Hamilton No. 180662, 2020-Ohio-1580, ¶ 21. The mere assertion that the street-lighting system is a utility, without more, is insufficient to establish that it is a utility for purposes of R.C. 2744.01(G)(2)(c). We find that by establishing a lighting system, the city is not engaged in establishing, operating or maintaining a utility. Rather, we agree with the Eighth District which held that street lighting is not specifically designated as a proprietary function in R.C. 2744.01(G)(2). *Ugri v. Cleveland*, 8th Dist. Cuyahoga No. 65737, 1994 WL 476377, *3 (Sept. 1, 1994).

    *2. Not Customarily Engaged in by Nongovernmental Persons*

{¶23} Next, the plaintiffs argue that street lighting is a proprietary function under R.C. 2744.01(G)(1). Under that provision, a function must satisfy both of the following to be a proprietary function:

> (a) The function is not one described in division (C)(1)(a) or (b) of this
> section and is not one specified in division (C)(2) of this section; [and]
> (b) The function is one that promotes or preserves the public peace,
> health, safety, or welfare and that involves activities that *are*
> customarily engaged in by nongovernmental persons.

(Emphasis added.) R.C. 2744.01(G)(1).

{¶24} The plaintiffs argue that providing street lighting is customarily engaged in by private entities. The city argues on the other hand that street lighting is not a proprietary function under R.C. 2744.01(G)(1) because it satisfies neither the first or second prong of the statute's conjunctive test.

{¶25} R.C. 2744.01(C)(1)(a) describes "[a] function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement." Neither party suggests that the provision of street lighting is a function described in R.C. 2744.01(C)(1)(a). R.C.

11

2744.01(C)(1)(b) describes "[a] function that is for the common good of all citizens of the state." The plaintiffs argue that the street-lighting system is not a function for the common good of all state citizens because it is limited geographically to certain streets and benefits only visitors to the nearby streets.

{¶26} In *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 559, 733 N.E.2d 1141 (2000), cited by the plaintiffs, the Supreme Court of Ohio determined that the conducting of a hog show and investigation into the competition benefitted only some Ohio citizens. *See Ryll v. Columbus Fireworks Display Co., Inc.*, 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, ¶ 24 (fireworks display benefitted only some citizens of the state); *Brown v. Lincoln Hts.*, 195 Ohio App.3d 149, 2011-Ohio-3551, 958 N.E.2d 1280, ¶ 20 (1st Dist.) (village's act of sponsoring a festival was for the particular benefit of the village and its current and past inhabitants).

{¶27} However, where, as here, the function is related specifically to the safety of the public, courts have found the function to be for the common good of all state citizens, as set forth in R.C. 2744.01(C)(1)(b). *See Nordonia Landscape Supplies, LLC v. Akron*, 2020-Ohio-2809, ___ N.E.3d ___, ¶ 10 (9th Dist.) (the removal of ice and snow from public roads is for the good of all state citizens in that it makes travelling by motor vehicle more convenient and safer); *Nihiser v. Hocking Cty. Bd. of Commrs.*, 4th Dist. Hocking No. 12CA18, 2013-Ohio-3849, ¶ 17 (designating street numbers and the development of an orderly system to do so serves the common good of all state citizens); *Lyons v. Teamhealth Midwest Cleveland*, 8th Dist. Cuyahoga No. 96336, 2011-Ohio-5501, ¶ 42 (provision of emergency dispatch services is a function that serves the common good of all state citizens); *Svette v. Caplinger*, 4th Dist. Ross No. 06CA2910, 2007-Ohio-664, ¶ 17 (county's operation of the 9-1-1 service is a function performed for the good of all state citizens). We hold that the city's provision of street lighting on a public street

serves the common good of all citizens of the state in accordance with R.C. 2744.01(C)(1)(b). The function does not satisfy the first prong of the conjunctive test in R.C. 2744.01(G)(1)(a), and therefore is not a proprietary function.

{¶28} With respect to the second prong of R.C. 2744.01(G)(1)(b), the plaintiffs concede that street lighting is a function that promotes or preserves the public peace, health, safety, or welfare. The plaintiffs contend that street lighting also satisfies the second provision of R.C. 2744.01(G)(1)(b) because it is an activity customarily engaged in by nongovernmental persons in private settings such as amusement parks and shopping centers. However, even if nongovernmental entities customarily provide lighting within their own properties, they do not customarily provide street lighting on public streets. *See Ugri*, 8th Dist. Cuyahoga No. 65737, 1994 WL 476377, at *3-4 (street lighting is not a function customarily engaged in by nongovernmental persons).

{¶29} The plaintiffs cite two cases, *Cleveland v. Pub. Util. Comm. of Ohio,* 67 Ohio St.2d 446, 424 N.E.2d 561 (1981), and *Ohio Power Co. v. Village of Attica*, 19 Ohio App.2d 89, 250 N.E.2d 111 (3d Dist.1969), for the proposition that private corporations often provide street-lighting services, as nongovernmental actors. However, both cases involve the provision of street lighting by private companies *to* political subdivisions, and neither addressed whether street lighting is an activity customarily engaged in by nongovernmental persons. *See Cleveland* at 447-448; *Attica* at 91. The fact that a political subdivision contracts with a private entity to provide a governmental function does not transform the function into a proprietary one. *Lyons* at ¶ 46-47; *McCloud v. Nimmer*, 72 Ohio App.3d 533, 595 N.E.2d 492 (8th Dist.1991). We hold that the provision of street lighting on a public street does not satisfy the second prong set forth in R.C. 2744.01(G)(1)(b) because it does not involve an activity that is "customarily engaged in by nongovernmental persons." Consequently, street lighting is not a proprietary function under R.C. 2744.01(G)(1).

**{¶30}** Therefore, we hold that street lighting on a public street is a governmental function under R.C. 2744.01(C)(1)(b), because it is for the common good of all citizens of the state, and under R.C. 2744.01(C)(1)(c), because it promotes or preserves the public peace, health, safety, or welfare and involves activities that are not engaged in or customarily engaged in by nongovernmental persons.

## IV. Conclusion

**{¶31}** Whether the allegations in the plaintiffs' amended complaint relate to sidewalk maintenance or to the operation and maintenance of a street-lighting system, the functions involved are governmental functions. Because no exception applies to remove the city's immunity, the trial court did not err in determining that the city was entitled to judgment on the pleadings. Given our holding that the city was immune, we do not reach the plaintiffs' argument as to the trial court's denial of summary judgment in their favor on the issue of liability. We overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.